Waymon Scott HARTWELL and HHH
Farms, LLC, Appellants

v.

LONE STAR, PCA, Appellee

No. 06-17-00030-CV

Court of Appeals of Texas,
Texarkana.

Date Submitted: May 30, 2017

Date Decided: June 21, 2017

Rehearing Overruled July 18, 2017

William L. Wolf, Carling Nguyen, Wolf & Henderson, PC, 4309 Irving Ave, Ste 200, Dallas, TX 75219, for appellant.

Stephanie E. Kaiser, Lead Counsel, Doerner, Saunders, Daniel & Anderson, LLP, 6300 Ridglea Place, Ste 820, Fort Worth, TX 76116, Mark Domel, Doerner, Saunders, Daniel & Anderson, LLP, 711 W 7th St., Austin, TX 78701, N. Lance Bryan, Doerner, Saunders, Daniel & Anderson, LLP, 2 West Second Street, Ste 700, Tulsa OK 74103, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

After Waymon Scott Hartwell (Hartwell) and HHH Farms, LLC (HHH) (collectively Appellants), defaulted on the payment due on two of their loans from Lone Star, PCA (Lone Star), they sold cattle securing the loans without paying the proceeds to Lone Star. After learning of the cattle sales and that some of the proceeds were used to pay other creditors, Lone Star sued Appellants for breach of contract, breach of fiduciary duty, conversion, unlawful misappropriation under the Texas Theft Liability Act, and misapplication of fiduciary property/property of a financial institution. In addition to damages, Lone Star sought temporary and permanent injunctions to preserve the collateral securing its loans. After a hearing, the trial court granted the temporary injunction as requested by Lone Star.

On appeal, Appellants argue that (1) the trial court abused its discretion in denying its motion for a continuance, (2) the evidence is factually and legally insufficient to support the temporary injunction, (3) the application for a temporary injunction was legally infirm and did not mirror the relief granted by the trial court, (4) the tempo-

rary injunction is overly broad and vague, (5) the temporary injunction is void because it includes a mandatory injunction, and (6) the trial court erred in extending the bond for the temporary restraining order to apply as the temporary injunction bond. We affirm the temporary injunction because (1) the trial court did not abuse its discretion in denying the motion for a continuance, (2) sufficient evidence supports the temporary injunction, (3) Appellants failed to preserve any complaint regarding the application, (4) Appellants failed to preserve their complaints that the temporary injunction is overly broad and vague, (5) sufficient evidence and reasons stated in the temporary injunction support the mandatory injunction, and (6) there was no abuse of discretion in extending the bond.

## I. No Abuse of Discretion in Denying the Motion for a Continuance

In their first point of error, Appellants argue that the trial court abused its discretion in denying their motion for a continuance since their lead attorney had a prior setting at the same time in bankruptcy court in Plano and, consequently, could not be physically present at the hearing.[1]

A trial court's denial of a motion for a continuance is reviewed for abuse of discretion. *In re D.W.*, 353 S.W.3d 188, 192 (Tex. App.—Texarkana 2011, pet. denied). We will not disturb the trial court's decision unless the record shows a clear abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *D.W.*, 353 S.W.3d at 192. The trial court abuses its discretion only when its decision is "so arbitrary and unreasonable as to amount

to a clear and prejudicial error of law." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002)).

Rule 251 provides that a continuance shall not "be granted except for good cause supported by affidavit." Tex. R. Civ. P. 251. In this case, although the hearing on the temporary injunction had been scheduled on January 17 when the trial court entered a temporary restraining order (TRO), Appellants did not file their motion for a continuance until shortly before 6:00 p.m. on Friday, January 27.[2] Appellants' grounds for continuance were that their lead attorney, William L. Wolf, had a previously scheduled hearing the same afternoon in bankruptcy court in Plano and that their preparation and filing of a motion to dissolve the trial court's TRO prevented them from adequately preparing for the hearing. The motion was signed by Wolf and listed Carling T. Nguyen as co-counsel. Wolf's affidavit in support of the motion sets forth the details of his previously set hearing in Plano, but recites no facts in support of Appellants' allegation that they were prevented from adequately preparing for the hearing. At the hearing on Appellants' motion, Wolf acknowledged that although the TRO was timely served on Appellants [3] and delivered to his office, he did not look at it until Thursday, January 26, at which time he notified Lone Star's counsel of his conflict. Appellants offered no other evidence or explanation for their need for a continuance and did not contend that Wolf's co-counsel, Nguyen, was not available for the hearing.[4]

---

1. Appellants' lead attorney attended the hearing by telephone.

2. The hearing on the TRO was set for January 31, 2017.

3. Appellants were served with the TRO on January 18, 2017.

4. In their reply brief, Appellants offer several reasons why they did not want Nguyen to represent them at the temporary injunction

Lone Star pointed out that the TRO was set to expire on January 31, but indicated that it would be willing to agree to a continuance if there was also an agreement to extend the TRO. Consequently, the trial court recessed the hearing to allow the parties to conference in an effort to reach an agreement. When the hearing resumed, Lone Star's attorney advised the trial court that counsel for Appellants advised her that he was not prepared to discuss the case, which was not denied by Appellants. The trial court then denied Appellants' motion. The court also advised Wolf that he could attend the hearing by telephone. Wolf attended the temporary injunction hearing by telephone and participated in the hearing.[5]

Based on this record, we cannot say that the trial court abused its discretion in denying the motion for a continuance. To begin with, absence of counsel is generally not a good cause for a continuance. *See* Tex. R. Civ. P. 253; *Guerrero-*

*Ramirez v. Tex. State Bd. of Med. Exam'rs*, 867 S.W.2d 911, 916 (Tex. App.—Austin 1993, no writ).[6] In addition, it is not an abuse of discretion when there was no showing that the lead attorney was the only attorney who could represent Appellants at the hearing. *Guerrero-Ramirez*, 867 S.W.2d at 917. Further, although Appellants had been served with the TRO more than a week before, they did not file their motion until the Friday evening before the scheduled Tuesday hearing. A lack of diligence on the part of a party or its attorney is sufficient grounds for denying a motion for a continuance. *See McGrede v. Coursey*, 131 S.W.3d 189, 198 (Tex. App.—San Antonio 2004, no pet.). Finally, although Appellants now complain that the trial court could have granted the continuance and extended the TRO for fourteen days, when given the opportunity to agree to such an extension at the hearing, Appellants refused to do so. Since we find no abuse of discretion, we overrule Appellants' first point of error.[7]

hearing, none of which were offered to the trial court.

5. In their brief, Appellants argue that they were deprived of due process and denied benefit of counsel when Wolf "had to leave partway through the.... [h]earing," citing *Ex parte Hiester*, 572 S.W.2d 300 (Tex. 1978). In their reply brief, they offer additional reasons why it was unfair to require their counsel to attend by telephone. However, to preserve an issue for appellate review, a party must make a timely and specific motion or objection. Tex. R. App. P. 33.1(a)(1)(A); *Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014). Appellants did not make any objection or argument in their motion for continuance, at the hearing on the motion for a continuance, or at the temporary injunction hearing based on due process or the denial of counsel. Therefore, Appellants have not preserved this issue for our review. *See Petrohawk Props., L.P. v. Jones*, 455 S.W.3d 753, 782 (Tex. App.—Texarkana 2015, pet. dism'd).

6. Appellants argue that they were entitled to a continuance since the conflicting hearing was

within knowledge of the trial court as early as January 26, citing an email sent from the court coordinator noting the conflict. However, the email clearly indicates that at the time of the email, counsel for Appellants had not made a formal appearance in the case. Further, the email directs counsel representing the parties to confer to determine if a mutually agreeable date for the hearing could be reached. Nevertheless, counsel for Appellants did not confer with Lone Star's counsel until required to do so at the hearing on the motion for a continuance, and then again refused to confer. Thus, even assuming the email evidenced that the trial court was aware of the conflict on January 26, under these circumstances, we cannot say the trial court abused its discretion in denying the motion for a continuance. *See* Tex. R. Civ. P. 253.

7. Appellants also argue that the trial court was bound by Rule 11.1 of the Rules of Administration and Procedure of the First Administrative Judicial Region to grant the continuance. However, the rule cited by Appellants is contained in the Amended Rules

## II. Standard of Review for Review of a Temporary Injunction

 Our review of the trial court's granting of a temporary injunction is limited to determining whether the trial court clearly abused its discretion. *Gannon v. Payne*, 706 S.W.2d 304, 305 (Tex. 1986); *Bay Fin. Savs. Bank, FSB v. Brown*, 142 S.W.3d 586, 589 (Tex. App.—Texarkana ,2004, no pet.). It is an abuse of discretion when the trial court acts "arbitrarily and unreasonably, without reference to guiding rules or principles, or misappl[ies] the law to the established facts of the case." *Brown*, 142 S.W.3d at 589 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). In an evidentiary challenge, we view the evidence in the light most favorable to the trial court's order and indulge every reasonable inference in its favor. *Townson v. Liming*, No. 06-10-00027-CV, 2010 WL 2767984, at *2 (Tex. App.—Texarkana July 14, 2010, no pet.) (mem. op.) (citing *Moon v. Estate of Moon*, 221 S.W.3d 327, 329 (Tex. App.—Texarkana 2007, no pet.)). It is not an abuse of discretion "if some evidence reasonably supports the trial court's decision." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). Additionally, we may not substitute our judgment for the trial court's reasonable judgment, even if we would have reached a contrary decision. *Id.*

 The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Id.* at 204 (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam)); *Townson*, 2010 WL 2767984, at *2. Generally, the status quo is "the last, actual, peaceable, non-contested status that preceded the pending controversy." *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975) (citing *Janus Films, Inc. v. City of Fort Worth*, 163 Tex. 616, 358 S.W.2d 589 (1962) (per curiam)). A temporary injunction maintains the status quo by preventing "any act of a party which would tend to render the final judgment in the case ineffectual." *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 441 (Tex. Civ. App.—El Paso 1967, writ ref'd n.r.e.) (quoting *Moffitt v. Lloyd*, 98 S.W.2d 860 (Tex. Civ. App.—Waco 1936, no writ)); *see City of Dallas v. Wright*, 120 Tex. 190, 36 S.W.2d 973, 976–77 (1931). To be entitled to a temporary injunction, the applicant must plead and prove "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Towson*, 2010 WL 2767984, at *2 (citing *Walling*, 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968)).

## III. Sufficient Evidence Supports the Temporary Injunction

In their second point of error, Appellants assert that there is insufficient evidence to support the entry of the temporary injunction. Specifically, Appellants argue that the evidence was insufficient to show (1) that Lone Star had a cause of action for conversion, (2) that it had a probable right to the relief sought, and (3) that, in the absence of injunctive relief, it would suffer a probable, imminent, and irreparable injury.

of Administration and Procedure of the First Administrative Judicial Region, which were approved by the Texas Supreme Court by order dated February 14, 2017. 1st Admin. Jud. Reg. (Tex.) Loc. R. 11.1 (added by Tex. Sup. Ct. Misc. Dkt. No. 17-9015, entered Feb. 14, 2017), http://www.txcourts.gov/ media/1437211/region-1-local-rules-approved-misc-docket-no-179015.pdf. Appellants have not cited, nor have we found, a comparable local rule of the First Administrative Judicial Region that was in effect at the time of the hearing on the motion for a continuance. Therefore, this argument is without merit.

## A. The Evidence at the Hearing

Lone Star first established the undisclosed loans. Lone Star introduced evidence showing that on May 10, 2012, Legend Bank obtained a judgment against Hartwell in the amount of $306,259.68 (the Legend Bank judgment). Lone Star also established that on January 27, 2016, the United States Bankruptcy Court for the Eastern District of Texas entered an agreed order whereby Hartwell Farms, LLC, Debtor, and Hartwell, individually, were ordered to deposit $97,760.01 into an Interest on Lawyer Trust Account (IOLTA) and to pay attorney fees in the amount of $6,949.32 incurred by Fannin Bank (the Fannin Bank liability). The agreed order recited that the $97,760.01 was deemed to be wheat proceeds, as defined in the bankruptcy court's prior Agreed Order Granting Fannin Bank's Motion for Relief from the Automatic Stay.

Lone Star then proved its loans to Hartwell. Specifically, the evidence showed that Hartwell obtained a loan numbered 501 in the amount of $67,250.00 from Lone Star by promissory note dated November 6, 2015 (the 501 loan), secured by a commercial security agreement of the same date covering all equipment owned by Hartwell. Appellants obtained a loan numbered 530 in the amount of $275,000.00 from Lone Star by promissory note dated January 28, 2016 (the 530 loan), secured by a commercial security agreement of the same date covering all of the cattle and crops owned by Appellants, including all proceeds therefrom. Appellants also obtained a revolving line of credit loan numbered 531 in the amount of $375,000.00 from Lone Star by promissory note dated January 29, 2016 (the 531 loan), secured by a commercial security agreement of the same date covering all of the cattle and crops owned by Appellants, including all proceeds therefrom. In addition, Appellants obtained a loan numbered 591 in the amount of $125,000.00 from Lone Star by promissory note dated August 24, 2016 (the 591 loan), secured by a commercial security agreement of the same date covering all of the cattle and crops owned by Appellants and Hartwell's son, Austin, including all proceeds therefrom.

The loan agreements for each of the loans provided that, unless otherwise agreed by Lone Star in writing, Appellants agreed to account for and pay to Lone Star all of the proceeds of any disposition of collateral and that failure to do so would constitute a default under the loans. Lone Star's evidence also established that Hartwell failed to disclose the Legend Bank judgment or the Fannin Bank liability on the loan applications for any of the loans signed by Hartwell, individually, or as principal of HHH. In fact, Hartwell not only failed to disclose those debts, he certified in the applications that he and HHH were not liable on any other agreement or obligation not disclosed in the application, that there were no outstanding judgments against them, and that they were not presently delinquent or in default on any loan or financial obligation.

James Welch, the regional president for Lone Star, testified that the four loans were cross-collateralized in that all of the collateral secured all of the loans. He also testified that the loans were cross-defaulted, meaning that a default on one loan was a default on all of the loans. He stated that the 501 loan had a semi-annual payment due on November 1, 2016, that the 531 loan matured on October 1, 2016, and that the payments on these loans were in default. Welch also testified that the security agreements prohibited the borrowers from selling or disposing of the collateral, required them to keep any proceeds and collateral in trust for the secured part, forbade commingling of the proceeds with

the borrower's property, and required them to account for the proceeds to the secured party.

Welch also testified that he met with Hartwell on December 6, 2016, and was told by Hartwell that nearly $300,000.00 was being held at Valley Feed Mill in Paris due to a suit by Fannin Bank, that 80 head of cattle had been sold, and that the proceeds were at his house. A subsequent field inspection of the collateral revealed that 78 calves and a bull had been sold and that there was an additional shortage of 21 head of cattle when compared with the October field inspection report. Welch testified that Lone Star had not received any of the proceeds from the sale of the 78 calves, the bull, or from the 21 head of cattle. In addition, he testified that Hartwell told him that he planned to sell an additional 29 calves and 12 heifers shortly. Welch said that Lone Star had not received the proceeds from that sale so that there was a total of 140 head of cattle sold by Appellants from which Lone Star had not received the proceeds.

At the field inspection, Hartwell told Welch that the proceeds from the sale of the cattle had been deposited and used to pay operating expenses. At Welch's request, Hartwell produced sale barn receipts showing that 78 calves and one bull had been sold on November 17 and 18, 2016, and December 3, 2016, for a total amount of $54,777.80. Hartwell also produced payment receipts to Welch showing that he made payments to First United Bank on October 18, 2016, November 18 and 30, 2016, and December 9, 2016, totaling $56,830.96.

Lone Star offered Appellants the option of applying for a distressed loan restructuring (DLR) on the four loans as a result of their default. Although Appellants applied for the DLR, Lone Star decided not to restructure their loans. On December 16, Welch sent Appellants a notice reminding them of their duty to remit all proceeds from the sale of collateral to Lone Star and that failure to do so would be a default under their loan agreements. Welch met with Hartwell again on December 28 to advise him of Lone Star's decision. On that day, Hartwell refused to turn over additional checks representing proceeds from additional cattle sales to Lone Star that he had in his possession.

Welch testified that as a result of the application for the DLR filed by Appellants, Lone Star determined that Appellants had a negative cash flow margin of $99,000.00 in their operation. He also testified that the loans, which had been oversecured when made, were now under-secured. Based on the assessment of the DLR application, Welch opined that Appellants did not have the resources to repay the amounts currently owed to Lone Star. Welch stated that there was then around $580,000.00 owed on the loans, that Appellants had not submitted the proceeds from the sale of the collateral to Lone Star, that they had commingled the sales proceeds with their personal accounts, and that they had used the proceeds to pay other creditors. He also testified that if Lone Star had known about the Fannin Bank liability, it would not have made the loans. Welch also opined that because of the ease of selling cattle, the liquidity of the cash proceeds, and the Appellants' willingness to disobey court orders, Lone Star could suffer additional losses on the loans unless the Appellants were enjoined.

The evidence also showed that in a series of text messages from the first week of October 2016 between Hartwell and his loan officer at Lone Star, Trevor Thompson, Thompson appeared to authorize Hartwell to use the proceeds from cat-

tle sales to pay his operations costs.[8] However, Welch testified that in a series of texts from November 16, 2016, the day before any cattle were sold, Hartwell informed Thompson that he was gathering cattle to sell and asked if he could use the proceeds to pay American Bank or First United Bank for fuel, parts, miscellaneous, and feed. Thompson initially responded, "[N]o worries," but then followed this response with texts that stated, "Oh, you want to use calf funds to pay back?" and "We have all cattle financed. No, he can't have that calf money."[9]

Although Hartwell remembered the text messages from the first week of October, he testified that he did not remember receiving the text from Thompson saying he could not use the cattle money until after the proceeds were spent. He testified that he did not pay the 531 loan that matured in October because Fannin Bank had his proceeds from his corn tied up with a writ of garnishment. He admitted that he used the proceeds for the cattle sales to pay other persons other than Lone Star for his operating expenses. He also claimed that the 21 head discrepancy resulted from head of cattle owned by Austin, which were sold. He claimed that the proceeds from the sale of those cattle were put in Austin's account. He admitted that the proceeds had not been paid to Lone Star.

Hartwell also produced a check drawn on Austin's account and two checks drawn on HHH's account totaling $24,505.96 that he took to the December 28 meeting with Welch. He said that he did not pay them to Lone Star because Welch said Lone Star was not going to renew the loans. Hartwell admitted that he owes Lone Star the payments on the 501 and 531 loans, but said he has not paid them because he is waiting for his renewal. He also stated that he would pay Lone Star when it renews his loan. He acknowledged that he had received the TRO, and he stated that he had given his attorney the payments required by the TRO to be remitted to Lone Star.

## B. Cause of Action and Probable Right to Relief Sought

■ In their challenge to the sufficiency of the evidence showing a cause of action and the probable right to the relief sought, Appellants only argue that the evidence is insufficient to show a cause of action for conversion and a probable right of recovery under that cause of action. However, in addition to conversion, Lone Star pled causes of action for breach of

---

8. In their reply brief, Appellants argue that this series of texts constituted a renewal of the 531 loan. However, the text message states, "Yes keep your receipts. When we get your loan redone you can pay it back out of the operating money, but we may have to get the corn money before we renew it." The text does appear to be some evidence that Lone Star and Appellants were negotiating a renewal of the 531 loan at that time. It can also be some evidence that renewal of the loan was conditioned on Lone Star receiving the $300,000.00 of corn money. There was no testimony that Lone Star had received this money.

9. Welch's testimony regarding these text messages was supported by copies of the text messages that were attached to the reporter's record as Plaintiff's Exhibit 25. In their reply brief, Appellants argue that these texts should not be considered for any purpose. However, Welch testified regarding the content of these text messages, including reading sections of the texts messages verbatim, without objection. Further, the text messages were attached to the reporter's record without objection by the parties. Under these circumstances, the text messages were properly considered by the trial court and may be considered by this Court in support of the trial court's temporary injunction. See Tex. Health Enters., Inc. v. Tex. Dep't of Human Servs., 949 S.W.2d 313, 314 (Tex. 1997) (per curiam); McGary v. First Bancredit Corp., 273 S.W.2d 905, 907 (Tex. Civ. App.—Texarkana 1954, writ ref'd n.r.e.).

contract, breach of fiduciary duty, unlawful misappropriation under the Texas Theft Liability Act, and misapplication of fiduciary property/property of a financial institution. In its order, the trial court did not state which claims of Lone Star it found had merit.

When an unchallenged independent ground or basis supports the trial court's complained of ruling or order, "we must accept the validity of that unchallenged independent ground, and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment." *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 424 (Tex. App.—Dallas 2009, no pet.) (citing *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). The trial court's findings in the temporary injunction would support a conclusion that Lone Star had shown a cause of action for breach of contract and a probable right of recovery on that claim. Since this ground has not been challenged and fully supports the trial court's order, Appellants have not shown harmful error related to these elements. *See id.*; *Britton, v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

**C. Probable, Imminent, and Irreparable Injury**

Appellants also argue that there was no evidence of probable, imminent, and irreparable injury. In their argument, Appellants completely ignore the evidence introduced at the hearing, except the text messages from the first week of October. They make no effort to challenge any of the other evidence, other than to conclusively state that Lone Star offered no evidence that the assets of Appellant were at risk of loss or might become unavailable in the absence of an injunction.[10]

Included within the probable injury are the elements of imminent harm, irreparable injury, and no adequate remedy at law. *Blackthorne v. Bellush*, 61 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, no pet.). "An existing remedy is adequate if it 'is as complete and as practical and efficient to the ends of justice and its prompt administration as is equitable relief.'" *Id.* (quoting *Ballenger v. Ballenger*, 694 S.W.2d 72, 76 (Tex. App.—Corpus Christi 1985, no writ)). If the defendant is

---

10. In their argument challenging the sufficiency of the evidence supporting this element of Lone Star's proof, Appellants include a multi-page argument criticizing the findings contained in the temporary injunction, as well as the scope of the injunction, without any separate point of error or citation to any legal authority. We have repeatedly warned litigants to refrain from raising multifarious points of error. *See, e.g., In re Guardianship of Moon*, 216 S.W.3d 506, 508 (Tex. App.—Texarkana 2007, no pet.); *Newby v. State*, 169 S.W.3d 413, 414 (Tex. App.—Texarkana 2005, pet. ref'd). A multifarious point of error is one that raises more than one specific ground of error. *In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied). Failure to heed our warnings runs the risk of having any multifarious issue(s) being summarily overruled. *Newby*, 169 S.W.3d at 414; *Harris v. State*, 133 S.W.3d 760, 764 n.3 (Tex. App.—Texarkana 2004, pet. ref'd); *Parra v. State*, 935 S.W.2d 862, 875 (Tex. App.—Texarkana 1996, pet. ref'd). In addition, even if we were to consider these issues in the interest of justice, the Texas Rules of Appellate Procedure require an appellant to present "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i); *In re Estate of Curtis*, 465 S.W.3d 357, 379 (Tex. App.—Texarkana 2015, pet. dism'd). "Bare assertions of error, without argument or authority, waive error." *Curtis*, 465 S.W.3d at 379 (quoting *McKellar v. Cervantes*, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.)). Since Appellants have not made an argument with appropriate citation to authority on these issues, they are waived.

insolvent, there is no adequate remedy. *Id.* (citing *Ballenger*, 694 S.W.2d at 76; *Surko Enters., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex. App.—Houston [1st Dist.] 1989, no writ)). Further, even if damages are subject to a precise calculation, an injunction will lie to prevent the dissipation of specific funds that would otherwise be available to pay a judgment. *See Minexa Arizona, Inc. v. Staubach*, 667 S.W.2d 563, 567–68 (Tex. App.—Dallas 1984, no writ). In determining imminent harm, "the trial court may determine that, when violations are shown up to or near the date of trial, the defendant has engaged in a course of conduct and the court may assume that it will continue, absent clear proof to the contrary." *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 937 S.W.2d 60, 77 (Tex. App.—Houston [14th Dist.] 1996), *aff'd as modified*, 975 S.W.2d 546 (Tex. 1998) (citing *State v. Tex. Pet Foods*, 591 S.W.2d 800, 804 (Tex. 1979)).

At the hearing, Lone Star produced evidence that Appellants' outstanding loans were in default with approximately $540,000.00 still owed by them. The evidence also showed that as admitted by Hartwell, the Appellants had significantly reduced the collateral securing the loans by selling cattle, using some of the proceeds to pay other creditors, and depositing the remainder into their personal or business accounts. Welch testified, with documentary support, that such actions violated the loan agreements and security agreements and that the actions were taken without the permission of Lone Star.

Hartwell also admitted that he had refused to pay the proceeds from his most recent sale of cattle to Lone Star and stated that he would not do so until Lone Star renewed his loans. In addition, Welch testified that because of the actions of Appellants, the loans were under-secured. He also testified that the Appellants had a negative $99,000.00 cash flow and that they lacked the resources to repay the loan. Further, since Appellants' sales of the collateral occurred shortly before suit was filed and their refusal to pay the proceeds to Lone Star continued to the date of the hearing, the trial court could reasonably conclude that Lone Star had been harmed by the dissipation of its collateral and that such harm was likely to continue in the future without injunctive relief.

Therefore, we find that some evidence supports the trial court's implied finding of probable, imminent, and irreparable injury. We overrule Appellants' second point of error.

## IV. Alleged Defects in the Application for Temporary Injunction Were Not Preserved

In their third point of error, the Appellants contend that the trial court erred in granting the temporary injunction because of various alleged defects in the application for temporary injunction (the Application). They argue that (1) the Application does not state grounds for enjoining Appellants' use of its assets and bank accounts, (2) the injunctive relief requested in the Application does not "mirror" the relief granted, and (3) the affidavit supporting the request for injunctive relief is not based on personal knowledge. Lone Star argues that Appellants have failed to preserve these complaints. To the extent Appellants' complaints relate to alleged defects in the Application and supporting affidavit, we agree.

Under the Texas Rules of Civil Procedure, "[e]very defect, omission or fault in a pleading[,] either of form or of substance," is waived unless it is specially pointed out by a special exception "in writing and brought to the attention" of the

trial court before the complained-of judgment or order is signed. Tex. R. Civ. P. 90; *see Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex. 1989); *Smith v. Grace*, 919 S.W.2d 673, 678 (Tex. App.—Dallas 1996, writ denied). When special exceptions are filed, the movant has the burden of obtaining a hearing on its special exception and a written ruling. *Smith*, 919 S.W.2d at 678; *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 141 (Tex. App.—Texarkana 2000, no pet.). If the record does not contain a ruling on the special exceptions, the movant fails to preserve any complaint for appellate review. *Smith*, 919 S.W.2d at 678.

Appellants filed special exceptions on January 31, minutes before the scheduled start of the hearing on the temporary injunction. Nevertheless, the record does not reflect that the special exceptions were brought to the attention of the trial court or that Appellants obtained any ruling on them. Therefore, Appellants have failed to preserve for our review any complaint related to defects or omissions in the Application.

■■■ Appellants also complain that Welch's affidavit is not based on personal knowledge. However, failure to show that "the affiant had personal knowledge is a defect in form and must be preserved in the trial court." *Sundance Res., Inc. v. Dialog Wireline Servs., L.L.C.*, No. 06-08-00137-CV, 2009 WL 928276, at *5 (Tex. App.—Texarkana Apr. 8, 2009, no pet.) (mem. op.) (quoting *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207 (Tex.

App.—Dallas 2005, no pet.)). To preserve an issue for appellate review, a party must (1) make a timely and specific motion or objection and (2) obtain a ruling, or a refusal to rule, from the trial court. Tex. R. App. P. 33.1(a)(1)(A); *Burbage*, 447 S.W.3d at 256; *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Although Appellants objected to Welch's affidavit in their special exceptions, they failed to obtain a ruling on their objection. Therefore, Appellants have failed to preserve any complaint related to Welch's affidavit for our review.[11]

## V. Complaints Regarding the Terms of the Temporary Injunction Were Not Preserved

■■■ In their fourth point of error, Appellants complain that certain terms of the temporary injunction were vague and overly broad, contending that it effectively prohibits them from conducting business and does not sufficiently apprise them of the property and persons subject to the injunction. We find that these complaints were not preserved.

In *Smith v. Texas Department of Family and Protective Services*, Smith sought to challenge a permanent injunction contending, inter alia, that the terms of the injunction were overly broad and effectively precluded her from engaging in her lawful business. No. 03-13-00204-CV, 2015 WL 410487, at *2 (Tex. App.—Austin Jan. 29, 2015, no pet.) (mem. op.) The Austin Court of Appeals held that since Smith had

---

11. To the extent Appellants' argument can be construed as challenging the temporary injunction because it does not "mirror" the relief requested in the Application, Appellants cite no case authority in support of their argument. The only case cited by Appellants states the general proposition that "where the injunctive relief granted *exceeds* the relief requested by the applicant in the petition, the trial court exceeds its jurisdiction." *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 402 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (emphasis added). In this case, the only portions of the temporary injunction Appellants complain do not "mirror" the relief sought in the Application grant *less* relief, not more, than the relief sought in the Application.

not raised any of her complaints in the trial court, as required by Rule 33.1(a), she had failed to preserve any error on appeal. *Id.* at \*4. In *Snell v. Spectrum Association Management L.P.*, Snell sought to challenge the terms of a temporary injunction, asserting that he had informed the trial court of his disagreement. No. 04-10-00285-CV, 2010 WL 3505139, at \*3 (Tex. App.—San Antonio Sept. 8, 2010, no pet.) (mem. op.). Since the record did not show that Snell had asserted any objection at the trial court, the San Antonio Court of Appeals held he had waived his argument under Rule 33.1(a). *Id.*

In this case, the Appellants filed a motion to dissolve the TRO entered by the trial court complaining that the language was over-broad and hindered them in conducting their business. Even though the other terms of the TRO were substantially the same as the terms of the temporary injunction, Appellants made no complaint regarding those terms. When the trial court entered the temporary injunction, it addressed the complaint asserted in the motion to dissolve by broadening the permissible use of Appellants' assets and financial accounts to include the payment of routine business expenses and scheduled debt payments, in addition to the payment of ordinary living expenses. Appellants made no complaint to the trial court regarding these revisions, nor did they make any other complaint regarding the terms of the temporary injunction. By failing to present their complaints to the trial court, Appellants failed to preserve any error regarding the terms of the temporary injunction. TEX. R. CIV. P. 33.1(a)(1)(A); *Smith*, 2015 WL 410487, at \*4; *Snell*, 2010 WL 3505139, at \*3.

## VI. No Error in Including Mandatory Provisions

In their fifth point of error, Appellants contend (1) that insufficient evidence supports the inclusion of mandatory provisions in the temporary injunction and (2) that the trial court failed to state reasons for their inclusion. Although Appellants generally assert that all the provisions of section (b) of the temporary injunction constitute a mandatory injunction, the only subsection that they specifically address in their argument is subsection (b)(iii),[12] which they argue changes the status quo by requiring the turnover of their collateral to Lone Star.[13] They argue

---

**12.** Subsection (b)(iii) provides that Hartwell and HHH are

(b) REQUIRED to:

. . . .

(iii) turn over all personal property in which Lone Star has an interest, wherever any such property may be found, including all proceeds that the Enjoined Parties receive or have received but not yet remitted to Lone Star, to Lone Star immediately upon the entry of this order, which Lone Star, at its election, may sell without further notice to the Enjoined Parties and without further order of the Court. . . .

**13.** Appellants have made the conclusory assertion that the remaining subsections of section (b) constitute a mandatory injunction, with no supporting argument explaining how these subsections constitute a mandatory injunction. In addition, Appellants also complain that subsection (b)(iii) allows Lone Star to sell their property without further order of the trial court or notice to Appellants "as required by both the Loan Documents and applicable law." However, Appellants make no citations to either the record or applicable law in support of this contention. Our Rules require that "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record" be made in the brief. TEX. R. APP. P. 38.1(i). We have no duty to make an independent review of the record and applicable law to determine whether error occurred. *Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 270 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.). To do so would require us to abandon our role as neutral adjudicators and turn us into advocates for Appellants. *Holland v. Scroggie*, No. 03-16-00601-CV, 2017 WL 1832491, at \*1 (Tex.

that there is no evidence of extreme necessity or hardship to support this provision. Appellants also argue that the trial court did not state its reasons for including this provision, as required by Rule 683, and that, therefore, the temporary injunction is void.

### A. Sufficient Evidence Supports the Inclusion of Subsection (b)(iii)

■ Appellants argue, based on the October text messages, that the last peaceable, non-contested status that preceded the controversy in this case was when cattle were sold by Appellants "with Lone Star's express authorization and consent" and that they have maintained possession of the remaining cattle and collateral since that time.[14] Therefore, they argue, requiring them to turn over the remaining cattle and collateral disturbs the status quo. Lone Star responds that the status quo the temporary injunction sought to protect was the preservation of Lone Star's rights and property. It argues that the lawsuit arose because of Appellants' breaches of their loan agreements and the sale of collateral without paying the proceeds to Lone Star, endangering its security interest in the loans. It also argues that subsection (b)(iii) maintains the status quo by enforcing Lone Star's rights under the loan agreements and at law. We agree with Lone Star.

The evidence shows that before October 2016, Appellants' loans from Lone Star were over-secured by its security interest in specific collateral and any proceeds. In October and November 2016, Appellants defaulted in the payment of the 501 and 531 loans, which also rendered the other loans in default. While in default, Appellants sold at least 119 head of cattle and failed or refused to pay Lone Star any of the proceeds. An additional 21 head of cattle were either sold or are missing. By their own admission, Appellants used some of the proceeds to pay other creditors, deposited the remaining proceeds in their personal and business accounts, and refused to pay the proceeds to Lone Star. As a result, the loans are now under-secured, and the loans are not being paid. Consequently, the trial court found that Lone Star had been injured and was at risk of continuing injury due to the dissipation of its collateral and losses incurred on the loans.

■ The evidence also showed that under its loan agreements, Appellants were obligated to pay and account for all proceeds from the disposition of collateral to Lone Star. In addition, under the security agreements, upon Appellants' default, and after Lone Star gave any required notice and opportunity to cure the default, Lone Star could enter Appellants' property and take possession of the collateral or require Appellants to gather the collateral and make it available to Lone Star. Thus, the last peaceable, non-contested status between the parties was when the loans were being paid and were fully secured by specific collateral and their proceeds. Based on the evidence at the hearing, the trial court could reasonably conclude that as a result of Appellants' actions, in order to maintain the status quo, it was necessary to protect and preserve Lone Star's inter-

App.—Austin May 4, 2017, no pet. h.) (mem. op.); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). Therefore, Appellants have waived their additional complaint regarding subsection (b)(iii), and any complaint regarding the remaining subsections of section (b).

14. We note that the basis of Appellants' argument ignores the evidence at the hearing showing that any authorization or consent to the sale of the cattle and use of the proceeds to pay other creditors by Lone Star was rescinded before the actual sale of any cattle.

est in its collateral and its rights under the loan agreements.

While "a prohibitive injunction forbids conduct, . . . a mandatory injunction requires it." *Tri-Star Petroleum Co. v. Tipperary Corp.*, 101 S.W.3d 583, 592 (Tex. App.—El Paso 2003, pet. denied) (citing *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.)). The granting of a mandatory injunction is within the discretion of the trial court, but should only be granted on the clear showing of extreme necessity or hardship. *Id.*; *Rhodia, Inc. v. Harris Cty.*, 470 S.W.2d 415, 419 (Tex. Civ. App.—Houston [1st Dist.] 1971, no writ). However, a mandatory provision in a prohibitive injunction will not change the nature of an otherwise prohibitive injunction. *See Tri-Star Petroleum Co.*, 101 S.W.3d at 592.

The injunction in this case is generally prohibitive in that it enjoins the Appellants from concealing, damaging, or destroying the collateral; forbids any disposition of the collateral without the written consent of Lone Star; forbids the destruction or disposal of any records related to the collateral or disposition of the collateral; and enjoins the use of the Appellants' bank accounts, except to pay ordinary living expenses and routine business expenses. These prohibitions are meant to preserve Lone Star's interest in the collateral and their proceeds. Subsection (b)(iii) is incidental to these prohibitions in that it preserves Lone Star's rights under its loan agreement by requiring Appellants to turn over the collateral and proceeds that Appellants have refused to remit to Lone Star. *See id.* at 592–93. As seen above, there was some evidence supporting the inclusion of this provision in the temporary injunction. We overrule this sub-point.

**B. The Trial Court Stated Its Reasons for the Temporary Injunction**

Under Rule 683, the trial court, in its order, "shall set forth the reasons for its issuance." TEX. R. CIV. P. 683. The provisions of Rule 683 are mandatory, and when an order does not comply to its requirements, it "is subject to being declared void and dissolved." *InterFirst Bank San Felipe, N.A. v. Paz Const. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam). If the trial court does not state the reason for issuing the temporary injunction in its order or does not state it with sufficient specificity, the order is void. *Univ. Interscholastic League v. Torres*, 616 S.W.2d 355, 357–58 (Tex. Civ. App—San Antonio 1981, no writ); *Northcutt v. Waren*, 326 S.W.2d 10, 10 (Tex. Civ. App.—Texarkana 1959, writ ref'd n.r.e.).

In this case, the trial court found in its order that the Appellants:

- Have failed to remit proceeds from the sale of Lone Star's collateral as required by their loan documents with Lone Star (the "Loan Documents") and applicable law;

- Have deposited Lone Star's collateral into their accounts contrary to the terms of the Loan Documents;

- Have paid other creditors with Lone Star's proceeds (*i.e.*, its collateral) contrary to the terms of the Loan Documents and applicable law;

- Failed or refused to account for Lone Star's collateral, including proceeds from the sale of such collateral, as required by the Loan Documents;

- Have withheld and refused to remit collateral proceeds to Lone Star as required;

- Have rendered their loans with Lone Star undersecured and breached their margin requirements and other covenants, causing Lone Star to suffer harm and threats of future harm;

- Have a negative cash flow in their operations;
- Have failed to pay the 531 Loan that matured by its own terms and have failed to pay the annual installment owed on the 501 Loan in full as required by the Loan Documents. . . .

. . . .

That [Lone Star] is at risk of irreparable injury due to further dissipation and loss of the collateral secured by [Appellants'] loans with [Lone Star] and loss on the loans at issue.

That, unless the Court issues a temporary injunction enjoining and restraining [Appellants] . . . from engaging in the acts sought to be restrained. [Lone Star] will suffer substantial, immediate, and irreparable injury, loss, or damage for which there is no adequate remedy at law, including loss under the loans at issue and loss in collateral.

(Footnote omitted.) Thus, the trial court set forth in its order specifically how Lone Star had been harmed, the risk of irreparable injury in the future resulting from further dissipation of its collateral and loss on the loans, and that these were the reasons for issuing the temporary injunction.

Appellants have not asserted a point of error challenging the sufficiency of the reasons stated by the trial court for imposing the other, prohibitive, provisions of the

injunction. Also, Appellants have not cited any applicable authority, and we have found none, supporting its argument that the trial court must state separate, additional reasons for imposing mandatory provisions within the temporary injunction. Since the trial court's orders stated specific reasons for issuance of the temporary injunction, we find that this sub-point is without merit.[15]

For the reasons stated above, we overrule Appellants fifth point of error.

## VII. No Abuse of Discretion in Continuing the TRO Bond as a Bond for the Temporary Injunction

In their sixth point of error, Appellants assert that trial court erred in continuing the TRO bond as the bond for the temporary injunction. Appellants argue that Rule 684[16] requires a separate bond for the temporary injunction and that a separate bond was required since they filed a motion to dissolve the TRO.[17] In addition, Appellants complain that the amount of the bond was too low.

 In its order, the trial court ordered Lone Star to post a $10,000.00 bond and provided that the TRO bond would satisfy the requirement. Rule 684 requires,

In the order granting any temporary restraining order or temporary injunction, the court shall fix the amount of security to be given by the applicant.

---

15. Under this sub-point, Appellants also argue that the Application does not plead the grounds for this relief. For the reasons stated in Section IV, above, we find this argument was not preserved.

16. *See* Tex. R. Civ. P. 684.

17. Appellants cite no applicable authority in support of their argument that the trial court could not continue the TRO bond as security for the temporary injunction because they filed a motion to dissolve the TRO. To prevail

on their claim for the TRO bond, Appellant had to prove that the TRO "was issued. . . . when it should not have been and that it was later dissolved." *Beathard Joint Venture v. W. Houston Airport Corp.*, 72 S.W.3d 426, 435 (Tex. App.—Texarkana 2002, no pet.) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685 (Tex. 1990)). The record shows that a hearing on Appellants' motion to dissolve was held on January 30 and that it was denied by the trial court.

Before the issuance of the temporary restraining order or temporary injunction the applicant shall execute and file with the clerk a bond to the adverse party, with two or more good and sufficient sureties, to be approved by the clerk, in the sum fixed by the judge ... TEX. R. CIV. P. 684. These provisions "are mandatory and an order of injunction issued without a bond is void on its face." *Ex parte Lesher*, 651 S.W.2d 734, 736 (Tex. 1983) (orig. proceeding). A bond for a temporary restraining order does not generally continue to act as security for a temporary injunction. *Brown*, 142 S.W.3d at 590.

 However, as occurred in this case, the trial court may expressly provide in its order that the bond securing the temporary restraining order be continued as the bond for the temporary injunction. *Henry v. Cox*, 483 S.W.3d 119, 158–59 (Tex. App.—Houston [1st Dist.] 2015), *rev'd on other grounds*, No. 15-0993, 2017 WL 2200344 (Tex. May 19, 2007) (citing *Ex parte Coffee*, 160 Tex. 224, 328 S.W.2d 283, 285, 291–92 (1959) (orig. proceeding)); *Brown*, 142 S.W.3d at 590. As the Supreme Court held in *Coffee*, "If the written terms of the bond on file did not then truly reflect the full statutory obligations of the signers, the bond could have been amended or corrected, upon motion, to afford [Appellants] full protection." *Ex parte Coffee*, 160 Tex. 224, 328 S.W.2d 283, 292 (1959) (orig. proceeding) (citing *Mansfield v. Ramsey*, 196 S.W. 330 (Tex. Civ. App.—Beaumont 1917, no writ)). Therefore, we cannot say that the trial court abused its discretion in continuing the TRO bond as security for the temporary injunction.

 Neither can we say that the trial court abused its discretion in setting the bond amount at $10,000.00. The purpose of the bond is to protect the enjoined party from damages it may incur resulting from an improperly granted injunction. *To-*

*pheavy Studios, Inc. v. Doe*, No. 03-05-00022-CV, 2005 WL 1940159, at *7 (Tex. App.—Austin Aug. 11, 2005, no pet.) (mem. op.) (citing *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 203 (Tex. App.—Forth Worth 2005, no pet.)). It is within the trial court's discretion to set the amount of the bond, which will not be disturbed on appeal absent an abuse of discretion. *Id.* (citing *IAC, Ltd.*, 160 S.W.3d at 203). We review the adequacy of the bond on a case-by-case basis. *Id.* (citing *IAC, Ltd.*, 160 S.W.3d at 203).

At the hearing, Appellants offered no evidence of the damages they might incur if the temporary injunction were improperly granted. Without some evidence that would support a higher bond amount, we cannot say that the trial court abused its discretion in setting the bond amount. *Genssler v. Harris Cty.*, No. 01-10-00593-CV, 2010 WL 3928550, at *7 (Tex. App.—Houston [1st Dist.] Oct. 7, 2010, no pet.).

We overrule Appellants' sixth point of error.

For the reasons stated above, we affirm the judgment of the trial court.

