

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00053-CV

_____

THE GOOD SHEPHERD HOSPITAL, INC. D/B/A CHRISTUS GOOD SHEPHERD
MEDICAL CENTER LONGVIEW, Appellant

V.

SELECT SPECIALTY HOSPITAL - LONGVIEW, INC., Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 18-0718

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Chief Justice Morriss

# OPINION

In leased space located on the first two floors of Good Shepherd Hospital, Inc. d/b/a Christus Good Shepherd Medical Center Longview (Good Shepherd), Select Specialty Hospital-Longview, Inc. (Select), owns and operates a long-term care facility for certain former patients of Good Shepherd. Also, by a Purchased Service Agreement (PSA),[1] Select contracted for Good Shepherd to provide Select's patients with a range of hospital-based services, at least a few of which were for emergency situations. After Christus Health System (Christus) took over Good Shepherd, Good Shepherd offered Select a buyout of both the lease and the PSA, allegedly to substitute a Christus contractor for Select. Select refused the offer.[2] When Good Shepherd later

---

[1]In 2002, Good Shepherd had entered into the lease agreement with Select's predecessor. By its terms, the lease is effective through June 30, 2023, and provides that the relationship between Good Shepherd and the lessee "at all times shall remain solely that of Lessor and Lessee and shall not be deemed to constitute a partnership or joint venture." It also states, "Lessee and Lessor may enter into ancillary agreement[s] for the provision of [various] services."

On the same day that the lease was signed, Good Shepherd entered into an Ancillary and Support Services Agreement (Ancillary Agreement) with Select's predecessor which required Good Shepherd to provide dietary services, radiology/imaging services, laboratory and pathology services, blood banking services, surgery services, laundry and linen services, emergency response services, biomedical equipment maintenance and repair services, transcription services, and other additional purchased services. The fees for the provision of the services were included in the Ancillary Agreement, in detail. The Ancillary Agreement stated, "If the term of the Lease is extended beyond its initial term, this Agreement shall be automatically extended for the same length of time."

On December 18, 2012, Good Shepherd entered into the PSA with Select after renegotiating the provision of and rates for certain services. In addition to the services which had previously been provided under the Ancillary Agreement, Good Shepherd agreed to provide "additional services, such as hyperbaric therapy and wound care services, biomedical engineering services and maintenance repairs, and annual preventative maintenance services." The PSA specified that it "constitute[d] the entire Agreement between the parties with respect to the subject matter [t]hereof, and supersede[d] any and all other agreements, understanding, negotiations, or representations, oral or written, between them."

[2]In 2017, Good Shepherd requested a meeting with Brian E. Davis, the president of Select's Long-Term Acute Care Hospital Division, for the purpose of discussing whether Select would consider giving up its remaining term on the Lease in exchange for economic remuneration. Select declined the offer. On April 27, 2018, Good Shepherd notified Select, in writing, that it was invoking Section 7.2.5 of the PSA and was terminating the PSA after "evaluating [its] strategic plans" and that the effective date of the termination was July 31, 2018. On June 25, 2018, Good Shephard wrote to Select to clarify that it was terminating only the PSA and that it had "at no time . . . stated or implied that it would not comply with [the Lease's] terms and conditions." Further, Good Shepherd "request[ed] a meeting with the

notified Select that Good Shepherd was terminating the PSA, Select sued[3] for breach of contract and anticipatory breach of contract and was awarded a temporary injunction blocking Good Shepherd's termination of the PSA.[4]  This interlocutory appeal challenges that temporary injunction.  Because we conclude that the temporary injunction fails adequately to recite specific reasons supporting the temporary injunction, as required by Rule 683 of the Texas Rules of Civil Procedure, we will, without the need to rule on any substantive issues between the parties, dissolve the temporary injunction and remand this matter to the trial court for further proceedings.

---

appropriate Select staff to discuss the orderly transition of services to the new provider" and assured that Good Shepherd would "not allow patient care to be compromised, including the provision of Code Coverage."

[3]Select sued Good Shepherd on the same day the June 25 letter was received, for, among other things, breach and anticipatory breach of the lease agreement, Ancillary Agreement, and PSA.  Select also sought a declaratory judgment regarding its rights and status under these agreements and asked the trial court for a temporary injunction to preserve the status quo as it existed before Good Shepherd's termination of the PSA.  Good Shepherd responded that the lease agreement did not require it to provide any services, that the Ancillary Services Agreement was "no longer in effect and was superseded by the PSA," and that it properly terminated the PSA by providing written notice in a timely manner.

[4]The temporary injunction forbids Good Shepherd from:

> a.    refusing to provide Plaintiff and its patients any and all services that Defendant currently provides to them pursuant to the Lease, the PSA, or any other agreements, understanding, or protocol in place between Plaintiff and Defendant;
>
> b.    terminating the Lease or any agreement ancillary thereto, including the PSA;
>
> c.    interfering with Plaintiffs right to quiet possession of the Leased Premises and the common areas of Defendant's hospital;
>
> d.    materially changing the referral process and inhibiting the proper referral of patients to the Select [facility];
>
> e.    restricting Plaintiffs access to patient information for patients referred to the Select [facility]; and
>
> f.    refusing services to any of Plaintiffs patients that would materially compromise a patient's health and wellbeing.

The temporary injunction set a $1,000.00 bond and a trial date of June 17, 2019.

The temporary injunction was issued July 2, 2018, seven days after Select's petition was filed.[5] The trial court's order stated:

> The Court . . . finds that Select has shown a probable right to relief at trial. The Court also finds that Select has shown that Select and Select's patients will suffer a probable, imminent, and irreparable injury before trial if this temporary injunction is not issued. Specifically, the Court finds that [Good Shepherd] has threatened to discontinue certain healthcare-related services to Select and to Select's patients that [Good Shepherd] has provided to Select and Select's patients for numerous years pursuant to a Lease Agreement, an Ancillary and Support Services Agreement, and a Purchased Services Agreement ("PSA"). These services include life-saving healthcare services, such as emergency medical services (Code coverage) and blood-transfusion services, as well as other important medical services. The Court finds that, if [Good Shepherd] discontinues its services or inadequately performs its services before trial, then Select's patient care will likely be compromised and some of Select's patients will likely be exposed to a significant risk of serious harm and possibly even death. In addition, the Court finds that, if [Good Shepherd] discontinues its services before trial, then Select will likely be forced to shut down its long-term acute care hospital.

Temporary injunctions are issued to preserve the status quo until trial on the merits. *Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 759 (Tex. App.—Texarkana 2017, pet. dism'd). To support issuance of a temporary injunction, there must be proof of "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and

---

[5]At the temporary injunction hearing, Andrew M. Meade, Select's Chief Executive Officer, testified that Select's patients would have to be transferred by ambulance to another acute care hospital to receive many of the services Good Shepherd was terminating. Brenda Vozza, Select's Medical Director, testified that transporting Select's patients by ambulance to the nearest facility could be life threatening. She added that it was not feasible to continue to operate without the services provided by Good Shepherd.

Mead testified that Select operates twenty-six free-standing long-term care facilities across the country and that it was possible to operate the facility without being attached to an acute care hospital. According to Mead, Select had $122 million in cash and was currently in discussions with other service providers. Mead further testified that Select was negotiating with Longview Regional Center, located two and one-half miles away, to provide the services previously provided by Good Shepherd and that their conversations with Longview Regional Center were progressing toward a deal. Mead clarified that the lease did not require Good Shepherd to provide them with ancillary services and that Good Shepherd provided ninety-day written notice of the PSA's termination.

irreparable injury in the interim." *Id.*; *Townson v. Liming*, No. 06-10-00027-CV, 2010 WL 2767984, at *2 (Tex. App.—Texarkana July 14, 2010, no pet.) (mem. op.)).

Good Shepherd asserts that a de novo review of the trial court's apparent construction of the lease agreement, Ancillary Agreement, and PSA, require reversal of the temporary injunction. Good Shepherd argues that a plain reading of the contracts compels the conclusions that (1) the lease does not require Good Shepherd to provide any ancillary services, (2) the terms of the PSA specify that the Ancillary Agreement was superseded by the PSA, (3) the PSA provided for termination without cause on ninety-days' written notice, and, therefore, that Select cannot maintain any cause of action against Good Shepherd. Select responds by arguing that the Ancillary Agreement is in full force because, *inter alia*, it stated that its terms would be effective until the lease was terminated.[6]

"Our review of the trial court's granting of a temporary injunction is limited to determining whether the trial court clearly abused its discretion." *Id.* (citing *Gannon v. Payne*, 706 S.W.2d 304, 305 (Tex. 1986); *Bay Fin. Savs. Bank, FSB v. Brown*, 142 S.W.3d 586, 589 (Tex. App.—

---

[6]The PSA contains the following relevant provisions:

> 7.  TERM AND TERMINATION OF THIS AGREEMENT
>
> 7.1 Term. This Agreement shall be effective as of November 26, 2012[,] and shall thereafter coincide with the term of the Lease.
> 7.2 Termination. This Agreement may be sooner terminated on the first to occur of the following:
> 7.2.5 Termination Without Cause. Either party may terminate this Agreement at anytime on ninety (90) days written notice to the other party . . . .
> 7.2.6 Effects of Termination. On termination of this Agreement, as hereinabove provided, neither party shall have any further obligation hereunder except for obligations accruing before the date of termination.

Texarkana 2004, no pet.)). However, "[a] trial court has no 'discretion' in determining what the law is." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "Although an abuse of discretion does not occur when the trial court heard conflicting evidence and substantive, probative evidence reasonably supports the trial court's decision, we will apply a de novo standard of review when the issue turns on a pure question of law," even when reviewing a trial court's decision to grant or deny a temporary injunction. *Pinnacle Premier Props., Inc. v. Breton*, 447 S.W.3d 558, 562 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex. 1961); *Estate of Gilbert*, 513 S.W.3d 767, 771 (Tex. App.—San Antonio 2017, no pet.) (citing *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908 (Tex. App.—Dallas 2006, no pet.)). "We review questions of law without deference to a lower court's conclusion." *Breton*, 447 S.W.3d at 562.

Because we find that the language of the temporary injunction does not provide the required detail under Rule 683 of the Texas Rules of Civil Procedure, we need not decide whether a temporary injunction should have been issued on this record.

"In relevant part, [Rule] 683 requires every order granting a temporary injunction to state the reasons for its issuance and to be specific in its terms." *Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.) (citing TEX. R. CIV. P. 683). "The requirements of rule 683 are mandatory and must be strictly followed." *Id.* (citing *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam); *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1966) (per curiam)). "If a temporary injunction order fails to comply with the requirements of rule 683, it is void." *Id.* (citing

6

*Qwest Commc'ns Corp.*, 24 S.W.3d at 337; *AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). We may declare a temporary injunction void even if that claim has not been raised. *Id.*; *City of Sherman v. Eiras*, 157 S.W.3d 931, 931 (Tex. App.—Dallas 2005, no pet.).

"The elements of a claim for breach of contract are (a) a valid, enforceable contract, (b) performance under the contract by the claimant, (c) breach by the defendant, and (d) an injury to the claimant caused by the breach." *Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 668 (Tex. App.—Texarkana 2017, pet. denied). "[T]o prevail on a claim for anticipatory breach of contract, a plaintiff must establish each of the following elements: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party."[7] *Fleming v. Allstate Ins. Co.*, No. 03-09-00705-CV, 2010 WL 4137502, at *3 (Tex. App.—Austin Oct. 22, 2010, pet. denied) (mem. op.)). "An injunction plaintiff need not establish the correctness of his claim to obtain temporary relief, but must show only a likelihood of success on the merits." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990).

The trial court found that "Select ha[d] shown a probable right to relief at trial" and would suffer a "probable, imminent, and irreparable injury." However, the reasons provided in a temporary injunction order "must be specific and legally sufficient, and not mere conclusory statements." *Collins*, 261 S.W.3d at 795; *see El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740,

---

[7]Select argues that it offered "uncontroverted evidence that Good Shepherd breached the express warranty of quiet enjoyment in the Lease." It also argues that Good Shepherd breached the contract by developing and participating in a competing long-term care facility. We do not address these issues because the temporary injunction made no mention of them.

746 (Tex. App.—Dallas 2011, no pet.). The temporary injunction fails to recite facts supporting the determination that Select established a probable right to relief at trial based on breach or anticipatory breach of the contracts, if any. Rather, it states merely that Good Shepherd threatened to discontinue "certain healthcare-related services . . . provided to Select and Select's patients for numerous years pursuant to the lease, Ancillary Agreement, and PSA." We conclude that this statement did not constitute a legally sufficient and specific finding that Select had a likelihood of success of proving the elements of either the breach of contract or anticipatory breach of contract claim on which the temporary injunction was based. Accordingly, the finding of probable right to recovery was conclusory. *See Arkoma Basin Expl. Co. v. FMF Assos. 1990–A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008) ("conclusory" is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based").

Further, to establish a probable injury that is irreparable, a party moving for a temporary injunction must show that there is "no adequate remedy at law." *Hartwell*, 528 S.W.3d at 444 (citing *Blackthorne v. Bellush*, 61 S.W.3d 439, 442 (Tex. App.—San Antonio 2001, no pet.) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). The temporary injunction order recited potential injuries or death that might be suffered by Select's patients and opined that Select might be forced to close its facility. Because the order did not demonstrate how Select would suffer irreparable injury (a) caused by a probable breach (b) for which there was no adequate remedy at law, including monetary damages, by explaining "the facts the trial court relied on," the finding was improperly conclusory. *Collins*, 261 S.W.3d at 796; *see In re Chaumette*, 456 S.W.3d 299, 306 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Kotz v. Imperial Capital Bank*, 319 S.W.3d

8

54, 56–57 (Tex. App.—San Antonio 2010, no pet.) (citing *Arkoma Basin Expl. Co.*, 249 S.W.3d at 389 n.32).

Because the trial court's temporary injunction does not satisfy the requirements of Rule 683, we conclude it is void. We reverse the trial court's order, dissolve the temporary injunction, and remand the matter to the trial court for further proceedings.

Josh R. Morriss, III
Chief Justice

Date Submitted:     October 8, 2018
Date Decided:      October 11, 2018

9