ACCEPTED
15-25-00100-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/5/2025 4:36 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/5/2025 4:36:51 PM
CHRISTOPHER A. PRINE
Clerk

No. 15-25-00100-CV

# In the Court of Appeals
# for the Fifteenth Judicial District, Houston, Texas

Maria Margarita Rojas; Maternal and Child Healthcare and Research Center LLC d/b/a Clinica Latinoamericana; Clinicas Latinoamericanas; Clinica-Waller Latinoamericana; Clinica-Telge Latinoamericana a/k/a Clinica de la Mujer a/k/a Houston Birth House,

*Defendants-Appellants,*

*v.*

State of Texas,

*Plaintiff-Appellee*

## REPLY BRIEF FOR APPELLANTS MARIA ROJAS, ET AL.

Katherine Ginzburg Treistman (00796632)
Abby Parsons (24094303)
Leah Schultz (24126910)
Thomas Matthew Hudson (24126650)
ARNOLD & PORTER KAYE SCHOLER LLP
TransCanada Energy Center
700 Louisiana Street, Suite 4000
Houston, Texas 77002
katherine.treistman@arnoldporter.com
abby.parsons@arnoldporter.com
leah.schultz@arnoldporter.com
matt.hudson@arnoldporter.com

Marc Hearron (24050739)
*Lead Counsel*
CENTER FOR REPRODUCTIVE RIGHTS
199 Water St., 22nd Fl.
New York, New York 10038
Tel.: 202.524.5539
mhearron@reprorights.org

Jenna Hudson
CENTER FOR REPRODUCTIVE RIGHTS
1600 K Street, N.W., Suite 700
Washington, D.C. 20006
jhudson@reprorights.org

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ...................................................................................ii

INTRODUCTION ...........................................................................................1

ARGUMENT...................................................................................................2

I. The Temporary Injunction Violates Rule 683.....................................2

    A. Defendants can raise the Rule 683 defects here.........................2

        1. Rule 683 is mandatory and cannot be forfeited. ..............2

        2. The first two defects here were not forfeited....................4

    B. The order fails to provide specific reasons. ...............................5

    C. The order is not specific.............................................................7

    D. The order fails to set a trial date. ............................................12

II. The Attorney General Lacks Standing to Sue for an Injunction or to Sue in the Name of the State for Violations of the Abortion Ban or Medical Practice Act. ..........................................................12

    A. The Attorney General lacks authority to sue for an injunction. ................................................................................12

    B. The Attorney General lacks authority to sue on the State's behalf. ........................................................................................17

III. The State Failed to Plead and Prove Its Entitlement to a Temporary Injunction.................................................................................18

    A. The State failed to prove a probable right to relief. ..................18

        1. The State's evidence was inadmissible............................18

            a) The State's case was premised on two inadmissible exhibits. ...........................................18

            b) The court properly refused to consider hearsay in the exhibits. .....................................................21

        2. The State failed to show that abortions had occurred. ..................................................................22

        3. The injunction against practicing medicine was unsupported by pleadings or evidence..........................26

    B. The State failed to prove a probable, imminent, and irreparable injury.....................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# INDEX OF AUTHORITIES

## Cases

*Am. Precision Vibrator Co. v. Nat'l Air Vibrator Co.*, 764 S.W.2d 274 (Tex. App.—Houston [1st Dist.] 1988), *as modified*, 771 S.W.2d 562 (Tex. App.-Houston [1st Dist.] 1989, no writ) .................................. 26

*Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004) .................................... 14

*Burks v. State*, 40 S.W.3d 698 (Tex. App.—Waco 2001, pet. ref'd) ............ 22

*Chicago & N. W. Transp. Co. v. Ry. Labor Executives' Ass'n*, 908 F.2d 144 (7th Cir. 1990) ........................................................................ 4

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011)..................................................................................................... 3

*City of Sherman v. Eiras*, 157 S.W.3d 931 (Tex. App.—Dallas 2005, no pet.)..................................................................................................... 3

*Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359 (Tex. App.—Houston [1st Dist.] 2022, no pet.) .................................... 2, 3, 4, 12

*Cobb v. State*, 95 S.W.3d 664 (Tex. App.—Houston [1st Dist.] 2002, no pet.)..................................................................................................... 5

*In re Commitment of Gipson*, 580 S.W.3d 476 (Tex. App.—Austin 2019, no pet.) ..................................................................................... 26

*In re Corcoran*, 343 S.W.3d 268 (Tex. App.—Houston [14th Dist.] 2011, no pet.)..................................................................................... 3

*Davis v. Hendrick Autoguard, Inc.*, 294 S.W.3d 835 (Tex. App.—Dallas 2009, no pet.)................................................................................. 13

*Diruzzo v. State*, 581 S.W.3d 788 (Tex. Crim. App. 2019) .......................... 1

*State ex rel. Durden v. Shahan*, 658 S.W.3d 300 (Tex. 2022).............. 17, 18

*El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432 (Tex. 1996)..... 17, 18

*Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621 (Tex. 2012) ........ 24

*In re Garza*, 126 S.W.3d 268 (Tex. App.—San Antonio 2003, no pet.) ........ 3

*Good Shepherd Hosp., Inc. v. Select Specialty Hosp.-Longview, Inc.*, 563 S.W.3d 923 (Tex. App.—Texarkana 2018, no pet.) ........................... 6

*Grynberg Prod. Corp. v. British Gas, p.l.c.*, 817 F. Supp. 1338 (E.D. Tex. 1993)............................................................................................ 23

*In re Houston*, 92 S.W.3d 870 (Tex. App.—Houston [14th Dist.] 2002, no pet.)..................................................................................... 9

*Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792 (Tex. App.—Dallas 2008, no pet.)................................................................................. 6

*Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659 (10th Cir. 1990)......................................................................................8

*Kotz v. Imperial Capital Bank*, 319 S.W.3d 54 (Tex. App.—San Antonio 2010, no pet.)......................................................6

*Ex parte Lesher*, 651 S.W.2d 734 (Tex. 1983)..................................3

*Lias v. State Farm Mut. Auto. Ins. Co.*, 45 S.W.3d 330 (Tex. App.—Dallas 2001, no pet.)...................................................17, 18

*In re Luther*, 620 S.W.3d 715 (Tex. 2021)..................................*passim*

*Mack v. Ret. Hous. Found.*, 627 S.W.3d 391 (Tex. App.—Houston [14th Dist.] 2021, no pet.) .....................................................20

*McGregor v. Clawson*, 506 S.W.2d 922 (Tex. App.—Waco 1974, no writ) ...........................................................................................13

*Millwrights Loc. Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683 (Tex. 1968)..........................................................................20, 21

*Owens v. State*, 916 S.W.2d 713 (Tex. App.—Waco 1996, no pet.)......21, 22

*Quick v. City of Austin*, 7 S.W.3d 109 (Tex. 1998) .......................14

*Rawson v. Brownsboro Indep. Sch. Dist.*, 263 S.W.2d 578 (Tex. App.—Dallas 1953, writ ref'd n.r.e.) .................................23, 27

*Rubin v. Gilmore*, 561 S.W.2d 231 (Tex. App.—Houston [1st Dist.] 1977, no writ) ................................................................8, 10, 11

*Sandoz Inc. v. Amgen Inc.*, 582 U.S. 1 (2017).........................13, 14

*Scott v. Schedler*, 826 F.3d 207 (5th Cir. 2016)...........................9

*Sills v. State*, 846 S.W.2d 392 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd)..............................................................................22

*Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967) ................................9

*Sneed v. Webre*, 465 S.W.3d 169 (Tex. 2015) ....................14, 15, 16

*State v. Rojas*, No. DC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 (Waller Cnty. Dist. Ct. June 13, 2025)..............................................................................................1

*State v. Zurawski*, 690 S.W.3d 644 (Tex. 2024).........................21

*In re T.T.*, 39 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2001, no pet.).............................................................................................20

*Tex. v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d 708 (W.D. Tex. 1999), *aff'd*, 237 F.3d 631 (5th Cir. 2000).........................................17

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979).................14

*Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897 (Tex. 2004) ...........21

*W. Hills Harbor Owners Ass'n v. Baker*, 516 S.W.3d 215 (Tex. App.—El Paso 2017, no pet.)........................................................24

**Statutes**

Tex. Civ. Prac. & Rem. Code § 51.014(a)(4).............................................5

Tex. Civ. Prac. & Rem. Code § 65.011(3) ..............................................16

Tex. Gov't Code § 402.007(a) ................................................................18

Tex. Health & Safety Code § 170A.002 ............................................ 15, 26

Tex. Health & Safety Code § 170A.004 ....................................................15

Tex. Health & Safety Code § 170A.005 ...................................... 13, 15, 18

Tex. Health & Safety Code § 170A.006 ............................................. 15, 16

Tex. Health & Safety Code § 170A.007 ....................................................15

Tex. Health & Safety Code § 171.207(a) ..................................................16

Tex. Health & Safety Code § 171.208(a)-(b) ...................................... 15, 16

Tex. Occ. Code § 151.002(a)(13).............................................................27

Tex. Occ. Code § 157.005 ................................................................ 27, 28

Tex. Occ. Code § 165.051 .......................................................................16

Tex. Occ. Code § 165.101 ............................................................. 13, 16, 18

22 Tex. Admin. Code § 224.3(b)...............................................................28

**Other Authorities**

Fed. R. Civ. P. 65(d) ................................................................................8

Tex. R. Evid. 201(b) ......................................................................... 23, 24

Tex. R. App. P. 33.1(a)(1)..........................................................................4

Tex. R. Evid. 201(d) ...............................................................................24

Tex. R. Evid. 605 ...................................................................................20

Tex. R. Evid. 683 ............................................................................*passim*

Tex. R. Evid. 803(24)(A) ........................................................................21

## INTRODUCTION

Since Defendants' brief was filed, the State has continued to trample on Mrs. Rojas's rights. The State's brief never mentions that the State obtained a fifteen-count indictment of Mrs. Rojas—including twelve counts for an *offense that doesn't apply to her*. *See* Indictment, *State v. Rojas*, No. DC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 (Waller Cnty. Dist. Ct. June 13, 2025). Counts I-XII are for alleged violations of Section 165.152 of the Texas Occupations Code. But as Defendants pointed out (Defs.' Br. 24-25), this offense "proscribes only the conduct of licensed physicians," not others. *Diruzzo v. State*, 581 S.W.3d 788, 804 (Tex. Crim. App. 2019). That didn't stop the State from forging full steam ahead.

In this case, the State defends a fundamentally flawed temporary injunction. The injunction's "findings" are conclusory. The prohibition on "practicing medicine" lacks specificity and is open to interpretation. Indeed, the decisions cited in the State's brief require reversal for lack of specificity.

The Attorney General also overreached in seeking injunctive relief that the Legislature didn't authorize. The State argues that once the Attorney General files a civil case, he can seek remedies available in any civil suit. But the generally applicable rule is that when the Legislature creates a statutory scheme and specifies the remedies, those remedies are exclusive.

The State also failed to prove a probable right to relief. The State's case was premised on two unauthenticated exhibits that were erroneously admitted. The State argues only that the presiding judge had personal knowledge and could have authenticated them. But (1) the judge didn't

authenticate them, and (2) if he had, it would have violated the fundamental rule against the presiding judge testifying as a witness.

Lacking robust arguments, the State instead leads with forfeiture. But none of its preservation arguments has merit either.

Numerous independent grounds require reversal.

## ARGUMENT

### I. The Temporary Injunction Violates Rule 683.

The temporary injunction fails to meet Rule 683's mandatory requirements and is void.

#### A. Defendants can raise the Rule 683 defects here.

#### 1. Rule 683 is mandatory and cannot be forfeited.

As the State acknowledges (at 18), nearly all courts of appeals have held that a party may raise a Rule 683 defect initially on appeal. There are sound reasons for this rule.

*First*, "[t]he Texas Supreme Court and all Texas intermediate courts of appeals have held unanimously that a temporary injunction that violates Rule 683 is void." *Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359, 371 n.9 (Tex. App.—Houston [1st Dist.] 2022, no pet.). Rule 683's requirements "are mandatory and must be strictly followed," and an injunction "that does not strictly comply with the mandates of Rule 683 is subject to being declared void and dissolved." *In re Luther*, 620 S.W.3d 715, 722 (Tex. 2021). "Indeed, even [the two] intermediate courts of appeals that require preservation acknowledge that an injunction order that does not strictly comply with Rule 683 is void." *Clark*, 651 S.W.3d at 371 n.9.

2

A void injunction is unenforceable, and the injunction's defects can be raised in contempt proceedings. "A void order has no force or effect and confers no rights; it is a mere nullity." *In re Garza*, 126 S.W.3d 268, 271 (Tex. App.—San Antonio 2003, no pet.). "A trial court that holds a party in contempt for violating a void order necessarily abuses its discretion." *In re Corcoran*, 343 S.W.3d 268, 269 (Tex. App.—Houston [14th Dist.] 2011, no pet.). At least twice, the Texas Supreme Court has vacated a contempt order because the injunction's failure to comply with Rule 683 or 684 rendered both the injunction and the contempt order "void." *Luther*, 620 S.W.3d at 724; *Ex parte Lesher*, 651 S.W.2d 734, 736 (Tex. 1983).

It follows that a party can raise the injunction's voidness at any time. "Because an order that violates the mandatory requirements of Rule 683 is void, a party cannot waive compliance by consent or be estopped from challenging the order's failure to comply with these requirements." *Clark*, 651 S.W.3d at 371 n.8; *accord City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143 (2d Cir. 2011) (injunction imposed after default judgment may be challenged as violating Fed. R. Civ. P. 65(d)). "Indeed, even where a party does not raise the issue, courts may sua sponte declare a temporary injunction order void if it does not comply with Rule 683." *Clark*, 651 S.W.3d at 371 n.8; *see also City of Sherman v. Eiras*, 157 S.W.3d 931, 931 (Tex. App.—Dallas 2005, no pet.) (same).

Because an injunction that violates Rule 683 can be declared void *sua sponte* or collaterally attacked in contempt proceedings, it would make no sense if the enjoined party couldn't raise the injunction's voidness for the first

3

time on direct appeal. Such a holding would harm the party who obtained the injunction, by deferring resolving uncertainty about the injunction's enforceability until contempt proceedings.

**Second**, Rule 683 defects are non-waivable because a temporary injunction (including this one, CR.13) binds non-parties, such as agents and employees. Rule 683 ensures that restrained third parties can tell from the face of the order what is prohibited and for how long. *See Clark*, 651 S.W.3d at 372-73. Because an injunction "potentially affects the rights of third parties," the district court "has a duty independent of the desires of the parties to assure that the injunction is proper" and a "duty to refuse to enter a defective injunction even if neither party objects." *Chicago & N. W. Transp. Co. v. Ry. Labor Executives' Ass'n*, 908 F.2d 144, 149 (7th Cir. 1990).

### 2. The first two defects here were not forfeited.

Even if failure to follow Rule 683 could be forfeited, the first two defects were not forfeited. There was no opportunity for Defendants to have made a "timely" objection to the form of the temporary injunction before it was entered. *See* Tex. R. App. P. 33.1(a)(1). The court did not share a proposed order to allow form objections. Defendants first saw the wording of the district court's order after it was entered. Although the State had provided a copy of its proposed order (which is not in the appellate record), the State cites nothing for the proposition that Defendants needed to object to the form of the State's proposed order.

Moreover, the district court's bench ruling strongly suggested that the court's order would be substantially different from the State's proposed order

4

because the court's bench ruling was inconsistent with the State's proposed order. The court's bench ruling indicated it was not persuaded that any abortions had occurred; after all, the court had excluded the State's main evidence. The court stated: "Okay. So y'all are really worried about the abortion issue, and I get it. That's – I'm more worried about if someone's out there being a doctor and they shouldn't be a doctor." 1.RR.199. Defendants therefore reasonably believed that the court would prepare its own order limited to specific acts that the court found constituted practicing medicine without a license. Instead, Defendants learned after the hearing that the court largely adopted the State's proposed order. *See Cobb v. State*, 95 S.W.3d 664, 666 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (Where "challenge is to language in the written judgment, rather than to anything that occurred in the court hearing," and "the judgment was not prepared until after the end of the hearing, appellant could not have complained at the hearing about any alleged defect in the judgment.").

Once the temporary injunction was entered, it was immediately appealable. Tex. Civ. Prac. & Rem. Code § 51.014(a)(4). Rule 33.1 does not require a party to move to amend an appealable order *after* it is entered and await a ruling to preserve issues for appeal. *See Cobb*, 95 S.W.3d at 666.

### B. The order fails to provide specific reasons.

The temporary-injunction order fails to explain specific reasons for its issuance. The order includes no finding that any Defendant provided an abortion. To the contrary, the court's bench ruling suggested the court was not persuaded any abortions had occurred. 1.RR.199. Nor does the order

5

include a finding that any Defendant practiced medicine without a license—much less specify conduct that constituted such practice. Nor does the order include a finding that abortions or practicing medicine were likely to occur in the future. CR.12-14. Without such findings, Defendants do not "understand why they are enjoined." *Contra* State Br. 23. The absence of "reasons [that are] specific and legally sufficient, and not mere conclusory statements," makes the injunction void. *Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.).

The order states that the State "is likely to succeed in this action," CR.13, but that is a "conclusory" finding without "any underlying facts to support its finding," *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 56 (Tex. App.—San Antonio 2010, no pet.). There is a complete absence of any "facts supporting the determination that [the State] established a probable right to relief at trial." *Good Shepherd Hosp., Inc. v. Select Specialty Hosp.-Longview, Inc.*, 563 S.W.3d 923, 929 (Tex. App.—Texarkana 2018, no pet.).

The State tries to distinguish *Good Shepherd* by suggesting that, there, "it was not clear why the trial court considered there to be a likely breach of the contract." State Br. 22. But as discussed, it is not clear why the trial court here considered there to have been abortions provided in the past or in the future—particularly in light of the court's exclusion of evidence and its bench ruling, Defs.' Br. 5-6, 28. Nor is it clear what specific conduct the court found constituted practicing medicine without a license.

The State also asserts that Rule 683 is satisfied because the State "has alleged violations of specific laws" and the "court found the State was likely

6

to succeed." State Br. 22. But the findings must appear in the order itself. And even if one did reference the State's allegations in the petition, that only adds to the confusion. The petition alleges two abortions; it includes no allegation about Witness 3. CR.38-39. And the *only* acts that the petition alleges constituted the practice of medicine without a license in the petition were abortions. CR.26-27, 38-42. But at the hearing, the State's arguments about practicing medicine were broader than abortion. One reading the temporary-injunction order is left to guess which of the State's shifting arguments ultimately persuaded the court to issue an injunction.

The State points to the order's findings that "any injury" to the State's interest in the "enforcement of its own laws" is irreparable, as is "the termination of unborn life." CR.13. But that alone is insufficient without any finding or reasons explaining how any such injury has occurred and is likely to occur in the future—which the order lacks.

The State's assertion that this contention "is a challenge to the sufficiency of the evidence," State Br. 21, is incorrect. To be sure, if there were a finding that state law was likely to be violated or unborn life would be terminated, such a finding would be unsupported by the evidence. Defs.' Br. 45-53; *infra*, Part III. But the order includes no such finding, which makes the injunction void for failing to "set forth the reasons for its issuance." Tex. R. Civ. P. 683.

## C. The order is not specific.

The order also is not "specific in terms." *Id.* It leaves restrained parties "left to conjecture" about what "acts will violate the terms of the decree."

7

*Rubin v. Gilmore*, 561 S.W.2d 231, 235-36 (Tex. App.—Houston [1st Dist.] 1977, no writ).

**1.** The order prohibits "practicing medicine or performing abortions in violation of State law." CR.13. According to the State, this prohibits "two acts: (1) 'practicing medicine' and (2) 'performing abortions in violation of State law.'" State Br. 23. But if the injunction prohibits Defendants from "practicing medicine," full stop, then it is overbroad by prohibiting the Defendant Clinics from working with a licensed physician. So the better reading is that the injunction prohibits (1) "practicing medicine . . . in violation of State law" and (2) "performing abortions in violation of State law." CR.13. This ambiguity is another way in which the order is not written "unambiguously and with a reasonable degree of specificity." *Luther*, 620 S.W.3d at 723.

Regardless, the order is still an injunction that says: don't violate the State's laws governing the practice of medicine or the provision of abortions. "[G]enerally, injunctions simply requiring the defendant to obey the law are too vague." *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668 (10th Cir. 1990) (applying Fed. R. Civ. P. 65(d)).

**2.** Contrary to the State's arguments, prohibiting Defendants from "practicing medicine," CR.13, without specifying "the precise conduct prohibited," *Luther*, 620 S.W.3d at 723, is not clear enough. "An injunction should not contain broad generalities." *Scott v. Schedler*, 826 F.3d 207, 212 (5th Cir. 2016). "The order may not be susceptible to more than one

8

interpretation." *In re Houston*, 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

By enjoining Defendants from "practicing medicine," the order leaves Defendants to guess what specific conduct the order prohibits. Mrs. Roja's midwifery license permitted her to care for pregnant patients, and she could perform acts delegated to her by a physician, including through standing order. Defs.' Br. 7-8, 51. Likewise, medical assistants can perform clinical tasks delegated to them, and the performance of these delegated functions is not practicing medicine. Defs.' Br. 11-12, 52. If Mrs. Rojas or the medical assistants were engaging in conduct that crossed the boundary into practicing medicine, the court needed to specify that conduct in terms that are "definite, clear and precise . . . without calling on [them] for inferences or conclusions about which persons might well differ." *Ex parte Slavin*, 412 S.W.2d 43, 44–45 (Tex. 1967).

**3.** The State's attempt to distinguish *Luther* fails. In *Luther*, the TRO prohibited operating a salon "for in-person services . . . in violation of State of Texas, Dallas County, and City of Dallas emergency regulations related to the COVID-19 pandemic." 620 S.W.3d at 720. The State argues that the TRO there didn't "specify the laws the individual was enjoined from violating." State Br. 24. The same problem exists here: although the findings section mentions statutes, the injunction itself prohibits "practicing medicine or performing abortions in violation of State law" generally. CR.13.

Regardless, the problem in *Luther* was that the TRO failed "to specify— with reasonable detail and clarity and without reference to other

documents—the precise conduct prohibited." 620 S.W.3d at 723. The Supreme Court explained the order "should have set . . . out in reasonable detail, without ambiguity," "which 'in-person services' were restrained." *Id.* at 723. So too here: the injunction fails to specify conduct and requires restrained parties to decipher "State law." CR.13.

The State tries to distinguish *Cooper Valves, LLC v. ValvTechnologies, Inc.*, by arguing that there, the injunction prohibited lawful activities. State Br. 24. While overbreadth was one of the two independent reasons the injunction was reversed there, the other was that the open-ended nature of the prohibited conduct violated the specificity requirement. *See* 531 S.W.3d 254, 266-67 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

**4.** The decisions cited by the State (at 24-25) demonstrate the detail that the injunction here needed to provide but didn't.

In *Hughes v. Board of Trustees*, the TRO, "[w]ith clarity and in detail . . . enjoin[ed] appellants from engaging in ten acts of personal abuse and violence." 480 S.W.2d 289, 294 (Tex. App.—Fort Worth 1972, writ ref'd n.r.e.). The injunction here lists no specific acts.

In *Rubin*, the order "enjoin[ed] Rubin from interfering with [his business partners] 'in any manner' in 'their' operation and possession of the business." 561 S.W.2d at 235. The order was not definite because it did not "indicate to what extent he is prohibited from involving himself in the business venture." *Id.* at 235. Similarly, Defendants are entitled to run their clinics lawfully; the order fails to indicate what clinic activities are prohibited.

10

In *Breithaupt v. Navarro County*, the order was much more specific than here, prohibiting "directly or indirectly interfering with the use of such road as a public thoroughfare, or obstructing such road or interfering with the maintenance thereof." 675 S.W.2d 335, 339 (Tex. App.—Waco 1984, writ ref'd n.r.e.).

The State also suggests that "[u]nauthorized-practice-of-law cases provide an example." State Br. 25. But the decisions it cites support reversal here. The injunctions in those decisions didn't simply prohibit the party from "practicing law"; they detailed the specific conduct prohibited.

In *San Antonio Bar Association v. Guardian Abstract & Title Co.*, the injunction prohibited the title company from "preparing, in connection with real estate transactions in which the said defendant title company issues or is obligated to issue its policies of title or mortgage insurance, any legal instruments for execution by persons not employed in its business . . . [120 more words omitted]." 291 S.W.2d 697, 700 n.1 (1956).

In *Davies v. Unauthorized Practice Committee of the State Bar of Texas*, the injunction detailed seven specific categories of acts that were prohibited. For example, category 2 prohibited:

> Appearing as attorney or counselor or in any representative capacity in any action, proceeding, contest, or dispute in any court or before any judicial body or before any administrative body, commission, tribunal, examiner, or similar official or holding himself out to any person as competent to give legal advice or counsel or engaging in advising or counseling in law or the preparation of legal documents save those to which he may be a primary party.

11

431 S.W.2d 590, 591-92 (Tex. App.—Tyler 1968, writ ref'd n.r.e.).

Nothing approaching that level of detail is present here.

### D. The order fails to set a trial date.

Finally, the order is invalid because it fails to set the cause for trial on the merits. As Defendants acknowledged, counsel for Defendants mistakenly and regrettably stated at the hearing that the trial date need not be included, and the parties agreed to confer on a trial date later. Defs.' Br. 37; 1.RR.201-02. The State argues waiver and estoppel, but "[b]ecause an order that violates the mandatory requirements of Rule 683 is void, a party cannot waive compliance by consent or be estopped from challenging the order's failure to comply with these requirements." *Clark*, 651 S.W.3d at 370 n.8.

Citing nothing, the State suggests Rule 683 is satisfied "because the injunction includes the process for setting a trial date." State Br. 27. But the order must "set[] the cause for trial on the merits," not set forth the process. Tex. R. Civ. P. 683. "This is an express mandatory requirement and [the court is] not at liberty to ignore it." *Clark*, 651 S.W.3d at 372.

## II. The Attorney General Lacks Standing to Sue for an Injunction or to Sue in the Name of the State for Violations of the Abortion Ban or Medical Practice Act.

### A. The Attorney General lacks authority to sue for an injunction.

The Attorney General lacks the authority to seek injunctive relief for violations of the abortion ban and Medical Practice Act. Defs.' Br. 41-43. Those statutes give the Attorney General the authority to seek a civil penalty,

12

not to sue for injunctive relief. *See* Tex. Health & Safety Code § 170A.005; Tex. Occ. Code § 165.101.

**1.** The State argues that once the Attorney General files a suit for a civil penalty, "he is treated no differently than any other party" and "the full scope of equitable remedies—such as injunctions—are available to him, just as they are available to all others." State Br. 31. But the premise of that argument—that equitable remedies are generally available in all civil suits—is wrong.

When the Legislature creates a statutory cause of action and specifies the remedy, that remedy is generally exclusive. *McGregor v. Clawson*, 506 S.W.2d 922, 928 (Tex. App.—Waco 1974, no writ). The creation of "a statutory framework to secure performance of and compliance with a statute" suggests "that the legislature meant for only the statutory remedies to be applied." *Davis v. Hendrick Autoguard, Inc.*, 294 S.W.3d 835, 840 (Tex. App.—Dallas 2009, no pet.). Thus, "courts must be especially reluctant to provide additional remedies," *Sandoz Inc. v. Amgen Inc.*, 582 U.S. 1, 16 (2017), because doing so "may upset the Legislature's careful balance of policies and interests," *Sneed v. Webre*, 465 S.W.3d 169, 183 (Tex. 2015); *see also Brown v. De La Cruz*, 156 S.W.3d 560, 568-69 (Tex. 2004) (Where the Legislature "created a new penalty for which there was no common-law precedent," it "must be construed strictly.").

This rule of exclusive statutory remedies follows ordinary principles of statutory construction. "'When the Legislature includes a right or remedy in one part of a code but omits it in another, that may be precisely what the

13

Legislature intended,' and 'we must honor that difference.'" *Sneed*, 465 S.W.3d at 183 (citation omitted); *see also Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex. 1998) ("We presume that this omission has a purpose.").

Applying these principles, the U.S. Supreme Court held in a pharmaceutical case that where Congress enacted a statutory scheme that included a cause of action for a declaratory judgment to remedy a violation, the existence of that cause of action, "coupled with the absence of any other textually specified remedies, indicates that Congress did not intend [plaintiffs] to have access to injunctive relief." *Sandoz*, 582 U.S. at 16. And in a securities case, the Court rejected an implied private right of action in a statutory provision that was silent but was "flanked by provisions . . . that explicitly grant private causes of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571–72 (1979). As the Court explained: "Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Id.* at 572.

**2.** The abortion ban is a comprehensive scheme that prohibits certain conduct and specifies exact remedies for violations. It prohibits most abortions and then sets forth a complete set of criminal, civil, and administrative penalties for violating the prohibition. Tex. Health & Safety Code §§ 170A.002, .004, .005, .007. The scheme makes it a criminal offense to violate the prohibition and specifies the exact level of felony, depending on the circumstances. *Id.* § 170A.004. Next, it makes the violator "subject to a civil penalty of not less than $100,000 for each violation," and it specifies that the "attorney general shall file an action to recover [the] civil penalty."

14

*Id.* § 170A.005. It also specifies what other remedies the Attorney General "may recover": "attorney's fees and costs incurred in bringing the action." *Id.* Finally, it provides for administrative penalties to be imposed by "the appropriate licensing authority." *Id.* § 170A.007. Because the Legislature so carefully spelled out the remedies and who may seek them, permitting additional remedies would "upset the Legislature's careful balance of policies and interests." *Sneed*, 465 S.W.3d at 183.

Section 170A.006 does not provide statutory support for an injunction. *See* Defs.' Br. 42 n.10. That section provides: "The fact that *conduct* is subject to a civil or criminal penalty under this chapter does not abolish or impair any *remedy for the conduct* that is available in a civil suit." Tex. Health & Safety Code § 170A.006 (emphasis added). By its text, this provision preserves any existing remedy for the conduct of abortion if such remedy was already available in a civil suit. Remedies for the conduct of abortion would include the remedies available in the civil suits authorized by the Texas Heartbeat Act (or Senate Bill 8), which allows private citizens—but not the Attorney General—to sue over the provision of certain abortions and to recover statutory damages, costs and attorney's fees, and injunctive relief. *See id.* § 171.208(a)-(b). The Attorney General had no remedies available to him under Texas law for the conduct of providing an abortion; thus, Section 170A.006 preserved nothing for him.[1]

---

[1] The State suggests that, "[u]nder Appellants' theory, the State is prohibited from seeking an injunction to prevent the unlawful abortion." State Br. 34. Not so: the Legislature delegated such state power to private citizens. *See* Tex. Health & Safety Code §§ 171.207(a), 171.208(a)-(b).

15

**3.** The Medical Practice Act is another comprehensive statutory scheme with carefully created remedies. It authorizes the Attorney General to seek civil penalties only, and it vests the authority to sue for an injunction solely in the Texas Medical Board. Defs.' Br. 42; Tex. Occ. Code §§ 165.051, 165.101. Those choices cannot be ignored. *Sneed*, 465 S.W.3d at 183. The State argues that "[g]ranting the Board authority" to seek injunctive relief "does not *remove* authority from the Attorney General." State. Br. 32 (emphasis added). But that's backwards: the Attorney General lacks authority to sue for an injunction unless the Legislature granted it.

**4.** The State's reliance on Section 65.011(3) of the Civil Practice and Remedies Code is misplaced. State Br. 31-32. That section provides that an injunction may be granted if "the applicant is entitled to a writ of injunction under the principles of equity *and the statutes of this state relating to injunctions*." Tex. Civ. Prac. & Rem. Code § 65.011(3) (emphasis added). Another section provides that "principles governing courts of equity govern injunction proceedings *if not in conflict with this or other law*." *Id.* § 65.001 (emphasis added). Here, allowing the Attorney General to sue for an injunction would conflict with the statutory remedies prescribed in the abortion ban and Medical Practice Act.

Lacking any statutory authority, the State resorts to asserting the Attorney General's duty to represent the State in civil litigation. State Br. 30-31. Such authority is doubly inapplicable here. First, his authority to represent the State is generally limited to appellate courts. *El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432, 438 (Tex. 1996). In district courts, the

16

State is represented by the district or county attorney unless the Legislature specifically authorizes the Attorney General to represent the State. *Id.* Second, the duty to represent the State in civil litigation is not an authorization to file suit in district court for an injunction. The Attorney General is powerless to file such a suit "in the absence of explicit statutory or constitutional authorization." *Tex. v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d 708, 712 (W.D. Tex. 1999), *aff'd*, 237 F.3d 631 (5th Cir. 2000); *see also State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 303 (Tex. 2022).

**5.** The State argues this issue was forfeited. But the Attorney General lacked standing to sue for an injunction, Defs.' Br. 43, and standing can be raised at any time. Additionally, "[w]hen a cause of action is derived from a statute, the statutory provisions are mandatory and exclusive and must be complied with in all respects or the action is not maintainable for lack of jurisdiction." *Lias v. State Farm Mut. Auto. Ins. Co.*, 45 S.W.3d 330, 336 (Tex. App.—Dallas 2001, no pet.). Regardless, if this Court does not reach this issue now, it is likely to arise again in this case—in a motion to vacate the temporary injunction or at the end of the case—and the parties and lower court would benefit from this Court's guidance.

## B. The Attorney General lacks authority to sue on the State's behalf.

For the Attorney General to have authority sue on the State's behalf in district court, the Legislature must enact a statute empowering him to do so. *El Paso Elec.*, 937 S.W.2d at 438. The Legislature did not do so here. Defs.' Br. 43-45. The Legislature gave the Attorney General the power to sue in his

own name for a civil penalty. Tex. Occ. Code § 165.101; Tex. Health & Safety Code § 170A.005. If recovered, such penalty would be paid into the state treasury. Tex. Gov't Code § 402.007(a). But the State has identified no statute authorizing the Attorney General to file a suit on the State's behalf.

Citing nothing, the State argues that because the Legislature "has authorized the Attorney General to prosecute [these] causes of action," that necessarily means that "the Attorney General may properly sue in the name of the State of Texas." State. Br. 36. But that conclusion does not follow. Absent specific statutory authority "to *institute* a suit on the state's behalf," no state official has such authority, including the Attorney General. *Durden*, 658 S.W.3d at 303.

Because the Attorney General did not comply with the statutory provisions giving him a cause of action, the court lacked jurisdiction over his claim asserted on the State's behalf. *See Lias*, 45 S.W.3d at 336.

### III. The State Failed to Plead and Prove Its Entitlement to a Temporary Injunction.

#### A. The State failed to prove a probable right to relief.

The State introduced no competent evidence demonstrating that any abortions were provided or that anyone practiced medicine without a license.

##### 1. The State's evidence was inadmissible.

###### a) The State's case was premised on two inadmissible exhibits.

The State's entire case was premised on statements in two exhibits that the State asserted were redacted copies of arrest-warrant affidavits prepared by Lt. Wilkerson. *See* State Br. 3-10. Rather than call Wilkerson to testify and

18

be subjected to cross-examination, the State relied on his out-of-court statements. The court admitted the exhibits but excluded hearsay within them. 1.RR.36-37, 114-17. Their admission was an abuse of discretion.

As Defendants explained (at 47, 50-51), the State never authenticated the two exhibits. The State does not dispute that the exhibits were not self-authenticating and that it never called an authenticating witness.

The State argues that the *presiding judge* could have authenticated the exhibits because "the same judge who presided over trial also signed Rojas' arrest warrants" to which the affidavits were attached. State Br. 44. That's wrong for two reasons.

First, the judge did not authenticate them. The judge asked whether he could authenticate them based on his knowledge. 1.RR.106. But he did not examine the exhibits and state that they were they were authentic redacted copies based on his knowledge of the arrest-warrant affidavits.

Second, had the judge done so, it would have violated the rule that the "presiding judge may not testify as a witness at the trial." Tex. R. Evid. 605. "The prohibition in Rule 605 is stronger than any other in our rules of evidence; no other rule provides that objection is unnecessary to preserve the error for appellate review." *In re T.T.*, 39 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2001, no pet.). "This rule has been construed to prohibit not only a judge's direct testimony, but also the functional equivalent of witness testimony." *Mack v. Ret. Hous. Found.*, 627 S.W.3d 391, 397 (Tex. App.—Houston [14th Dist.] 2021, no pet.). In *Mack*, the court concluded that the trial court's statements at a hearing "suggesting the trial court had

personal knowledge regarding whether court staff had directly informed Mack's counsel of the trial assignment," *id*. at 396, violated Rule 605 because the trial court effectively provided witness testimony about "the pertinent factual issue," *id*. at 397. In this case, had the judge authenticated the documents, he would have been providing witness testimony that the documents were true redacted copies of the arrest-warrant affidavits. Rule 605 would not have permitted that.

The State's inability or refusal to call Wilkerson to testify and be exposed to cross-examination shows why "the proof required to support a judgment issuing a writ of temporary injunction may not be made by affidavit." *Millwrights Loc. Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 686 (Tex. 1968). The State's evidence consisted almost entirely of Wilkerson's out-of-court statements in the two unauthenticated documents. Defendants should have had an opportunity to probe Wilkerson's credibility and expose the incompleteness of his investigation through cross-examination. Although the State points to decisions allowing temporary injunctions to be based on affidavits if they are admitted into evidence, State Br. 43-44, the Texas Supreme Court has adhered to the *Millwrights* rule. *See State v. Zurawski*, 690 S.W.3d 644, 654 n.3 (Tex. 2024).

The State's lack of admissible evidence of abortions or practicing medicine requires reversal.

### b) The court properly refused to consider hearsay in the exhibits.

Even assuming the documents were admissible, the court properly excluded witness statements to investigators as hearsay. Defs.' Br. 46-47. The State argues that the court abused its discretion because those witnesses' statements fall within a prong of the statement-against-interest exception that allows a statement that "had so great a tendency . . . to make the declarant an object of hatred, ridicule, or disgrace." Tex. R. Evid. 803(24)(A). It was the State's burden to show that the exception was met, *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004), and the district court was well within its discretion to reject the State's argument.

The State argues that the statements could have exposed the witnesses "to investigation to determine who performed or assisted in performing the abortion." State Br. 46. But the exception requires hatred, ridicule, or disgrace. It does not encompass all statements that could lead to an investigation. Anyone reporting an alleged crime to an investigator would expect an investigation. *Cf. Owens v. State*, 916 S.W.2d 713, 718 (Tex. App.—Waco 1996, no pet.) (To admit victim's written account of assault, including "embarrassing details," as statement against interest, "would label all victims 'disgraceful' and declare that it is against one's social interest to admit they were a victim of a crime."); *Sills v. State*, 846 S.W.2d 392, 397 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (Potential "retaliation" for making statement to police does not amount to hatred, ridicule, or disgrace;

21

otherwise "virtually every statement a declarant made to another would be admissible.").

The State also argues that the statements might expose the witnesses to hatred, ridicule, or disgrace because abortion is "controversial." State Br. 46. But to be admissible, a statement must expose the declarant to hatred, ridicule, or disgrace "in the context of the declarant's social interests." *Sills*, 846 S.W.2d at 397. A tendency to make the declarant the object of hatred, ridicule, or disgrace must exist "at the time she made" the statement. *Owens*, 916 S.W.2d at 718. The statements here were made to an investigator, not (for example) to anti-abortion activists. The State does not suggest that the declarants would have expected, at the time the statements were made, that the investigators would treat them with hatred, ridicule, or disgrace in response to the statements. *Cf. Burks v. State*, 40 S.W.3d 698, 701 (Tex. App.—Waco 2001, pet. ref'd) (note bragging about sexual relationship not statement against interest where "the note was not intended by S. O. to be publicly disclosed and was made to a friend in confidence").

### 2. The State failed to show that abortions had occurred.

**a.** Assuming the trial court's evidentiary rulings were correct, the State still failed to show that abortions occurred. To obtain an injunction, it was the State's burden to negate "every hypothesis on which the alleged wrongful act might be lawful." *Rawson v. Brownsboro Indep. Sch. Dist.*, 263 S.W.2d 578, 581 (Tex. App.—Dallas 1953, writ ref'd n.r.e.); *see Grynberg Prod. Corp. v. British Gas, p.l.c.*, 817 F. Supp. 1338, 1361 (E.D. Tex. 1993)

22

("plaintiffs burden to *disprove* any lawful explanations for the defendant's behavior"). The State came nowhere close to meeting its burden.

The State points to the seizure of misoprostol. State Br. 39-41. But without evidence of how misoprostol is used, it does not show abortion—especially without mifepristone, the first drug in the two-drug medication-abortion protocol. Mrs. Rojas was a licensed midwife, and misoprostol is commonly used in labor and delivery. Defs.' Br. 18-19. If possessing misoprostol were evidence of abortion, then every hospital's labor-and-delivery ward would be accused of providing abortions.

As Defendants explained, the U.S. Food and Drug Administration recognizes that misoprostol is often used to begin labor and to decrease blood loss after delivery. Defs.' Br. 18. The World Health Organization recommends misoprostol to resolve an incomplete miscarriage. *Id.* at 18-19. The State does not dispute that FDA's and WHO's recognition of these common misoprostol uses meets the requirements for judicial notice under Rule 201(b). The State objects to this Court taking judicial notice, but judicial notice can be taken "at any stage of the proceeding." Tex. R. Evid. 201(d). "An appellate court may take judicial notice of a relevant fact" if the Rule 201(b) standard is met, and "[j]udicial notice of such a fact is mandatory if a party requests it and supplies 'the necessary information.'" *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (quoting Tex. R. Evid. 201(d)); *see also W. Hills Harbor Owners Ass'n v. Baker*, 516 S.W.3d 215, 219 (Tex. App.—El Paso 2017, no pet.) ("If the standards set forth in Rule 201 are met, an appellate court may take judicial notice of a fact

23

for the first time on appeal of matters not contained within the appellate record.").

To the extent that the misoprostol bottle with an incorrect patient name on it could be evidence of some pharmaceutical violation, the State has not accused Mrs. Rojas of any such violation and did not seek an injunction to prohibit her from committing it. The State has accused her of abortions. A licensed midwife's possession of misoprostol is evidence of a midwifery practice, not abortion.

The State points to the seizure of $2,900 in cash, without evidence of its source. State Br. 38. That does not show abortions; it shows that some uninsured individuals paid with cash. That's not unusual.

Remarkably, the State also points to Wilkerson's observation of Witness 3 entering the clinic with a man who had been a passenger in the vehicle she was driving, and then exiting the clinic with the man escorting her to the passenger side and appearing to help her get seated and buckled in. State Br. 41-42. From this, Wilkerson jumped to the absurd conclusion that Witness 3 may have had an abortion at the clinic. 2.RR.81.

What this actually shows is Wilkerson's ignorance about medicine and that he was grasping at straws to find an abortion. The man may have helped Witness 3 into the passenger seat for innumerable reasons. Moreover, according to Wilkerson, Witness 3 was in the clinic no more than 90 minutes. 2.RR.80-81 (5:54pm to 7:21pm). The State's theory is that Witness 3 purportedly took one misoprostol tablet during that visit—presumably after meeting with Rojas and reviewing her test results. Medications take time to

24

work. There is no evidence—certainly none in Witness 3's statements (which were properly excluded)—that she needed help because she began having contractions or passing the pregnancy in the clinic. To the contrary, the State confirmed that Witness 3 remained pregnant after March 5. 2.RR.90.

The State points to "a lab order, lab report, sign-in sheets, payment notes, and WhatsApp messages" and argues, without explanation, that these were "consistent with" Wilkerson's supposed "observation that Witness 3 had obtained an abortion at the clinic." State Br. 42. But as just discussed, Wilkerson did not observe that Witness 3 had an abortion. Regardless, as Defendants explained, nothing in the lab reports, WhatsApp messages, or other documents demonstrates that an abortion was provided. Defs.' Br. 22-23, 47-48. The State offers no explanation in response.

In short, what the above shows is not that Mrs. Rojas or the Defendant Clinics were providing abortions. It shows that Wilkerson jumped to wild conclusions after overseeing a slipshod investigation.

Finally, the State relies heavily on Mrs. Rojas's invocation of her Fifth Amendment rights in response to the State's questions. But that is not a substitute for the State's failure to offer competent, probative evidence of abortions. Defs.' Br. 49; *see In re Commitment of Gipson*, 580 S.W.3d 476, 487 (Tex. App.—Austin 2019, no pet.).

**b.** As Defendants explained (at 47-48), even if Witness 3's statements could be considered for their truth, they do not show that an abortion was knowingly provided or attempted. The State does not contest that a single 200-microgram tablet of misoprostol—the dose Witness 3

25

supposedly took—is one-fourth of the dose for a misoprostol-only abortion. Defs.' Br. 21-22, 48. Nor did the State introduce evidence showing that Mrs. Rojas *knew* Witness 3 was pregnant rather than undergoing a miscarriage. *Id.* at 48. The abortion ban prohibits knowingly providing an abortion, not miscarriage management. Tex. Health & Safety Code § 170A.002.

### 3. The injunction against practicing medicine was unsupported by pleadings or evidence.

**a.** The court lacked authority to enjoin Defendants from practicing medicine in any way apart from abortion because abortion was the only conduct pleaded. "Courts are without authority to grant injunctive relief beyond or in addition to that for which there is specific pleading." *Am. Precision Vibrator Co. v. Nat'l Air Vibrator Co.*, 764 S.W.2d 274, 280 (Tex. App.—Houston [1st Dist.] 1988), *as modified*, 771 S.W.2d 562 (Tex. App.-Houston [1st Dist.] 1989, no writ). As Defendants explained (at 49-50) and pointed out below (1.RR.141-43; CR.18, 25-26), the only conduct that the petition alleged constituted practicing medicine without a license was "perform[ing] abortions without a physician's license." CR.39. Indeed, the district court repeatedly remarked that the parties were focused more on the issue of abortion than on practicing medicine. 1.RR.141, 199. For good reason: abortion was the only conduct alleged in the petition, and Defendants were not on notice that anything else was at issue in the hearing.

**b.** Even if other acts had been pleaded, the State failed to show Mrs. Rojas practiced medicine. The websites that the State introduced showed that Mrs. Rojas did not hold herself out to the public as a physician. 2.RR.47-

26

50. Even if unspecified people referred to her as a doctor, that is not enough to be practicing medicine. "Practicing medicine" requires "the diagnosis, treatment, or offer to treat" a condition or "the attempt to effect cures of those conditions." Tex. Occ. Code § 151.002(a)(13). And it is undisputed that, as a licensed midwife who was associated with a physician and had standing orders from the physician, 2.RR.76, Mrs. Rojas could administer or provide prescription drugs and treat patients pursuant to the standing orders. Defs.' Br. 7-8, 51. Operating in this manner "is not considered to be practicing medicine without a license." Tex. Occ. Code § 157.005. The State failed to meet its burden to disprove these lawful explanations for Mrs. Rojas's conduct. *See Rawson*, 263 S.W.2d at 581.

**c.** The State also failed to show any of the medical assistants practiced medicine. Indeed, the State now argues only that medical assistants "*may* have practiced medicine." State. Br. 49 (emphasis added).

It is undisputed that unlicensed clinic personnel, including medical assistants, may exercise a wide variety of clinical tasks delegated to them and that doing so is not practicing medicine. Defs.' Br. 11-12, 52; 22 Tex. Admin. Code § 224.3(b); Tex. Occ. Code § 157.005. It was the State's burden to prove that medical assistants were diagnosing or treating a condition outside their delegated tasks. But the State failed to show, for example, that when Ley saw a man with a leg injury, he was not acting under the direction of an APRN via telemedicine—after Ley told investigators that he uses telehealth to communicate with APRN Labanino about patient care. 2.RR.84. Nor did the State show why the presence of an app on Gongora's phone necessarily meant

27

Gongora was independently diagnosing and treating patients rather than acting under the supervision of an APRN or physician. *See* State Br. 50.

According to the State, Wilkerson "documented 'reason to believe that Labanino is being compensated for the use of his medical credentials rather than actively working at the clinic.'" State Br. 49 (quoting 2.RR.78). The "reason" that Wilkerson cited was that Labanino had not been hired at the clinic and was being paid through Zelle. 2.RR.78. But investigators had evidence that APRN Labanino had his own business, 2.RR.77, meaning that his services were on a contract basis, not as an employee. Defs.' Br. 13-14. The payments show that APRN Labanino was being compensated for his business's services, not the use of his medical credentials. The State questions how APRN Labanino could have had time to provide telemedicine services if he worked somewhere other than the clinic, but Labanino's having his own business that provides these telemedicine services explains it.

In short, the State failed to meet its burden to negate these lawful explanations. As discussed, even if the State had met its burden, any injunction would have needed to describe the specific conduct that was restrained.

### B.    The State failed to prove a probable, imminent, and irreparable injury.

The State relies on the "same evidence" of its likelihood of success to show a probable, imminent, and irreparable injury. State Br. 50-51. For the reasons discussed, that evidence failed to show both past violations and a threat of future violations.

Respectfully submitted,

September 5, 2025          /s/ Marc Hearron

Marc Hearron (24050739)
CENTER FOR REPRODUCTIVE RIGHTS
199 Water St., 22nd Fl.
New York, New York 10038
Tel.: 202.524.5539
mhearron@reprorights.org

Jenna Hudson*
CENTER FOR REPRODUCTIVE RIGHTS
1600 K Street, N.W., Suite 700
Washington, D.C. 20006
jhudson@reprorights.org

Katherine Ginzburg Treistman (00796632)
Abby Parsons (24094303)
Leah Schultz (24126910)
Thomas Matthew Hudson (24126650)
ARNOLD & PORTER KAYE SCHOLER LLP
TransCanada Energy Center
700 Louisiana Street, Suite 4000
Houston, Texas 77002
katherine.treistman@arnoldporter.com
abby.parsons@arnoldporter.com
leah.schultz@arnoldporter.com
matt.hudson@arnoldporter.com

*Counsel for Defendants-Appellants*

*pro hac vice application forthcoming

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing reply brief contains 7,499 words according to Microsoft Word's word count.

_____/s/ Marc Hearron_____

**CERTIFICATE OF SERVICE**

I certify that the foregoing brief was served on the following through electronic filing on September 5, 2025:

Jeffrey Stephens: jeff.stephens@oag.texas.gov

Beth Klusmann: beth.klusmann@oag.texas.gov

*Counsel for Appellee State of Texas*

_____/s/ Marc Hearron_____

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Marc Hearron on behalf of Marc Hearron
Bar No. 24050739
mhearron@reprorights.org
Envelope ID: 105278462
Filing Code Description: Other Brief
Filing Description: Reply Brief for Appellants Maria Rojas, et al.
Status as of 9/5/2025 4:47 PM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Hilton | 24097834 | Amy.Hilton@oag.texas.gov | 9/5/2025 4:36:51 PM | SENT |
| Beth Klusmann | | beth.klusmann@oag.texas.gov | 9/5/2025 4:36:51 PM | SENT |
| Jeffrey Stephens | | jeff.stephens@oag.texas.gov | 9/5/2025 4:36:51 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Katherine Treistman | 796632 | Katherine.Treistman@arnoldporter.com | 9/5/2025 4:36:51 PM | SENT |
| Marc Hearron | 24050739 | MHearron@reprorights.org | 9/5/2025 4:36:51 PM | SENT |
| Thomas Hudson | 24126650 | matt.hudson@arnoldporter.com | 9/5/2025 4:36:51 PM | SENT |
| Leah Schultz | 24126910 | leah.schultz@arnoldporter.com | 9/5/2025 4:36:51 PM | SENT |
| Abby Lynn Parsons | 24094303 | abby.parsons@arnoldporter.com | 9/5/2025 4:36:51 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 9/5/2025 4:36:51 PM | SENT |
| Jenna Hudson | | jhudson@reprorights.org | 9/5/2025 4:36:51 PM | SENT |
| Melissa Sanchez | | Melissa.Sanchez@arnoldporter.com | 9/5/2025 4:36:51 PM | SENT |
| Catherine Hodges | | catherine.hodges@aporter.com | 9/5/2025 4:36:51 PM | SENT |
| Grace Ojionuka | | grace.ojionuka@arnoldporter.com | 9/5/2025 4:36:51 PM | SENT |
| Edockets Calendaring | | eDocketsCalendaring@arnoldporter.com | 9/5/2025 4:36:51 PM | SENT |